**AT & T INFORMATION SYSTEMS, INC., Appellant/Cross-Appellee,**

v.

**LOCAL 13000 COMMUNICATIONS WORKERS OF AMERICA, AFL–CIO, Appellee/Cross-Appellant.**

Nos. 85–1379, 85–1400.

United States Court of Appeals, Third Circuit.

Argued June 2, 1986.

Decided Aug. 1, 1986.

Rehearing Denied Sept. 9, 1986.

Francis M. Milone (argued), David S. Fortney, Philadelphia, Pa. (Morgan, Lewis & Bockius, of counsel), for appellant/cross-appellee, AT & T Information Systems Inc.

Richard H. Markowitz (argued), Robert C. Cohen, Philadelphia, Pa. (Markowitz & Richman, of counsel), for appellee/cross appellant, Local 13000, Communications Workers of America, AFL–CIO.

Before GIBBONS, BECKER and STAPLETON, Circuit Judges.

## OPINION OF THE COURT

GIBBONS, Circuit Judge:

AT & T Information Systems, Inc. (ATTIS) (formerly American Bell, Inc.) appeals from an order determining that ATTIS was bound by a collective bargaining agreement between Communications Workers of America, Local 13000 (formerly Federation of Telephone Workers of Pennsylvania) (Local 13000) and Bell Telephone Company of Pennsylvania (Pa. Bell), which contains a grievance-arbitration clause, and thus bound to arbitrate three grievances. Local 13000 cross-appeals from an order vacating the award made by the arbitrator in one of those grievances. We conclude that the district court erred in holding that ATTIS was bound by the arbitration undertaking in the Pa. Bell-Local 13000 collective bargaining agreement. Thus we will reverse in ATTIS's appeal (No. 85–1379) and affirm the order vacating the arbitration award in Local 13000's cross-appeal (No. 85–1400).

## I.

This dispute was before us in *American Bell, Inc. v. Federation of Telephone Workers*, 736 F.2d 879 (3d Cir.1984). As that opinion discloses, the dispute grew out of the reorganization of American Telephone & Telegraph Co. (AT & T), during the course of which AT & T spun off its local carrier subsidiaries. As a result of that reorganization Pa. Bell became a subsidiary of Bell Atlantic, Inc., a corporation unrelated to AT & T, while ATTIS was incorporated as a wholly-owned subsidiary of AT & T. On the day ATTIS commenced business, and prior to Pa. Bell's transfer to Bell Atlantic, Pa. Bell transferred to ATTIS twenty-six Phone Centers. In anticipation of these transactions, Pa. Bell and Local 13000 entered into a "Memorandum of Agreement," dated June 2, 1982, providing that the existing collective bargaining agreement would continue in effect for all employees transferred from Pa. Bell to its subsidiaries and affiliates. *See* Joint Appendix at 90. The Memorandum also provided that Pa. Bell would "seek to obtain the concurrence" of AT & T to continue in effect that collective bargaining agreement for all employees transferred to an affiliate or subsidiary of AT & T. *Id.* at 91. Finally, the Memorandum stated that in the event of a "sale or other voluntary transfer of ownership of all or part of its business and physical assets" to "any successor organization," Pa. Bell would secure the assent of that organization to be bound by the collective bargaining agreement. *Id.*

Pa. Bell did obtain the agreement of ATTIS to be bound by the collective bargaining agreement for several thousand workers transferred to ATTIS, and the rights of those workers are not in dispute. Pa. Bell failed, however, to obtain ATTIS consent with respect to the transfer of the Phone Centers assets. When Local 13000 approached ATTIS directly seeking written acknowledgment that Local 13000 was the collective bargaining agent for Phone Center employees, and that ATTIS was bound by the Pa. Bell-Local 13000 contract, ATTIS refused to make such an acknowledgment. Shortly thereafter Local 13000 filed the grievances here in issue. They all involve disputes over contracting out work, or having customers perform work, formerly done by members of Local 13000 employed by Pa. Bell. ATTIS refused to grieve, and Local 13000 demanded arbitration. When the Union scheduled arbitration hearings, ATTIS filed this action under section 301(a) of the Labor Management Relations Act, 29 U.S.C. § 185(a) (1982), seeking a declaratory judgment that it was not required to arbitrate, a preliminary injunction against further arbitration proceedings, and an order requiring Local 13000 to withdraw its arbitration requests. Local 13000 counterclaimed to compel arbitration.

No stay of the arbitration proceedings was entered, and arbitration went forward while the lawsuit was pending. The district court denied all relief requested by ATTIS, and dismissed the action, holding

that ATTIS was bound by the collective bargaining agreement, and had a duty, therefore, to arbitrate the three grievances.

When ATTIS first appealed to this court we explored various legal theories upon which Local 13000 defended the action of the district court. *See American Bell,* 736 F.2d at 887–89. We held that ATTIS was not obliged to arbitrate the grievances of Local 13000 on the basis of the extra-contractual theory of federal labor law such as the successorship doctrines, the single enterprise theory, or the alter ego doctrine. *Id.* We were unable, however, to determine from the district court opinion the legal theory upon which that court relied. Although on the record before us in that initial appeal it was clear that ATTIS was not a formal party to the collective bargaining agreement, and was not an affiliate or subsidiary of Pa. Bell, we noted that it was possible, given a proper record and adequate findings on the issue, for an employer to become bound by the terms of a collective bargaining agreement on a theory of corporate veil piercing. *Id.* Thus we remanded to give the parties an opportunity to explore that theory. In addition we rejected the position, advanced by Local 13000 and endorsed by Judge Becker in dissent, that Pa. Bell's breach of the June 3, 1982 Memorandum was alone sufficient to bind ATTIS because under the unique circumstances of the case, AT & T and its operating companies should have been treated as a single enterprise for purposes of all actions taken in furtherance of the court-ordered divestiture. What was left open on remand was the development of a factual basis for holding ATTIS bound to the collective bargaining agreement for Phone Center employees other than the mere fact that Pa. Bell failed to obtain its assent to be so bound.

## II.

Upon remand the parties engaged in additional discovery. While discovery went forward the arbitrations also went forward to conclusion. In those proceedings the arbitrators opined that ATTIS was bound by the collective bargaining agreement, and ruled in favor of Local 13000 on each of its grievances. ATTIS was then granted leave to amend its complaint, adding a claim to vacate the arbitration awards. On January 9, 1985, the district court held a hearing at which it was stipulated that the transcript of the October 12, 1983 hearing and the exhibits then introduced would continue to be part of the record. The parties also submitted eighteen stipulations of fact and they stipulated to the admissibility and authenticity of certain documents. *See* Joint Appendix at 690–97. After receiving proposed findings of fact and conclusions of law, the trial court, on May 14, 1985, concluded (1) that ATTIS was bound by the arbitration clause with respect to the Phone Center grievances, but (2) that the arbitration award with respect to what the parties call the "Philadelphia Inquirer" grievance did not draw its essence from the terms of the collective bargaining agreement and consequently should be vacated. *AT & T Information Systems, Inc. v. Local 13000 Communications Workers of America,* No. 83–2620 (D.N.J. May 14, 1985), *reprinted in* Joint Appendix at 709–32. This appeal and cross-appeal followed.

## III.

The district court correctly made an independent determination of the question whether ATTIS was bound by the arbitration provision. We likewise afford no deference to the arbitrator's opinion that ATTIS was bound to arbitrate. The existence of a contractual obligation to arbitrate, as distinct from the substantive or procedural provisions of a collective bargaining agreement, is a matter to be resolved by the courts not the arbitrators. *See AT & T Technologies, Inc. v. Communications Workers of America,* —— U.S. ——, 106 S.Ct. 1415, 1418, 89 L.Ed.2d 648 (1986).

## IV.

Local 13000 points out that Paragraph 12 of the July 2, 1982 Memorandum of Agreement requires the assent of a transferee to

the collective bargaining agreement "as a condition of any sale or other voluntary transfer of ownership of all or part of its business and physical assets." Joint Appendix at 91. It points to the difference between the July 2, 1982 Memorandum of Agreement and that negotiated between AT & T and the national unions in which the triggering event for assent to collective bargaining agreements is the transfer of employees rather than assets. Local 13000 insists that the difference was consciously chosen, while ATTIS argues that it was inadvertent and merely the product of a transcription error. ATTIS contends that Pa. Bell and Local 13000, like AT & T and the national unions, intended that Pa. Bell's obligation to obtain assent would arise only in the event of the transfer of employees not in the event of the transfer of assets. The district court adopted Local 13000's version of the intention of the parties to the July 2, 1982 Memorandum of Agreement. In doing so, the court described the testimony supporting ATTIS's transcription error contention as "singularly unpersuasive," and Local 13000's version as "consistent with the differences in the circumstances of the parties to the respective agreements." Joint Appendix at 718–19. The district court's finding that Pa. Bell and Local 13000 intended the requirement for assent of any successor organization to be triggered by the transfer of assets rather than employees is not clearly erroneous.

■ The district court's finding as to the Pa. Bell-Local 13000 intention is not, however, dispositive of ATTIS's obligation to arbitrate. Indeed that finding adds little, if anything, to what was before us in the prior appeal. The opinion of the court disposing of that appeal proceeds on the factual assumption that Pa. Bell was obliged to obtain and failed to obtain ATTIS's assent to the collective bargaining agreement when the Phone Center assets were transferred. *American Bell,* 736 F.2d at 885. The district court also relied upon the fact that ATTIS was aware of Pa. Bell's obligation under paragraph 12 of the Memorandum of Agreement. *See* Joint Appendix at 723. Like the finding with respect to the meaning of paragraph 12, however, this fact was before us in the prior appeal. We observed.

> Assuming that [ATTIS] did have knowledge of [Pa.] Bell's obligation, we are nonetheless uncertain of the particular grounds for imposing a duty on [ATTIS]. Possibly the duty could be imposed using a theory of equitable servitude on chattels. . . . Before we determine whether [ATTIS] should be bound on the basis of this theory, or on the basis of some other theory emphasizing [ATTIS's] awareness of [Pa.] Bell's duty, we believe we would benefit from a further discussion of the issue by the district court.

> ·   ·   ·   ·   ·

> We note that, although the federal courts have considered alleged breaches of "restraint-on-transfer" clauses such as the one in paragraph 12, they have not, to our knowledge, considered the question before us: whether the breach of the clause justifies the imposition of an obligation on the transferee.

*American Bell,* 736 F.2d at 887 & n. 18 (footnote and citations omitted).

We are left at this point no more enlightened than we were in the previous appeal. The district court did not, and Local 13000 does not, rely upon any theory of equitable servitude on assets subject to a restraint-on-transfer clause. Probably this is so because formidable legal and factual difficulties stand in the way of translating such a theory into a justification for a remedy for persons who when the disputed contracting out occurred, were still employed by Pa. Bell not by ATTIS. In any event, the district court relied, instead, on other legal theories, reasoning.

> It is, no doubt, a form of corporate veil piercing: a parent corporation cannot be permitted to juggle its subsidiaries or take advantage of the corporate formalities in order to perpetrate a legal wrong on third parties. Or, it can perhaps be viewed as a matter of agency: [sic] In its total control over all aspects of the conglomerate-restructuring, AT & T acted

as the agent for each of its wholly owned subsidiaries, including those yet-to-be-born.

Joint Appendix at 726–27. This reasoning is no more persuasive than that which we rejected in the first appeal. As we then explained, "there is no policy of federal labor law, either legislative or judge-made, that a parent corporation is bound by its subsidiary's labor contracts simply because it controls the subsidiary's stock and participates in the subsidiary's management." *American Bell*, 736 F.2d at 887. Indeed the district court's finding that Pa. Bell negotiated a different successorship clause than did AT & T in its negotiations with the national unions is inconsistent with the district court's agency theory. And as to the alleged "juggling" of the corporate form, there are no findings of fact suggesting any such juggling. At most what occurred is that Pa. Bell, for its own reasons or for no reasons, failed to fulfill its obligation under paragraph 12 when it transferred assets to an entity that, in the restructuring, was to become a potential competitor not an affiliate.

Neither the additional record evidence, nor the district court's findings, nor the district court's analysis add anything to what was before us in our prior appeal. The decision in that appeal controls the outcome here. ATTIS is not a party to the collective bargaining agreement on any theory of federal law of labor contracts which that opinion left open. Thus the district court erred in holding that it was bound to arbitrate the grievances about which Local 13000 complained.

### V.

None of the grievances should have been submitted to arbitration. Thus in ATTIS's appeal, No. 85–1379, we shall reverse the order denying ATTIS's prayer for a declaratory judgment and direct the entry of an order vacating the two arbitration awards that the district court let stand. In Local 13000's cross-appeal, No. 85–1400, the union contends that the court erred in vacating one of the arbitration awards, the Phil-

adelphia Inquirer grievance, because the district court overstepped its limited scope of review. Our decision that the grievance should never have been arbitrated moots the dispute over the district court's scope of review of the award. Thus we will not address that dispute. However, the order vacating the award respecting the Philadelphia Inquirer grievance is correct in the sense that the award cannot stand. Consequently, because the order vacating the Philadelphia Inquirer award was the correct result, that order will be affirmed.