**LABORERS' INTERNATIONAL UNION OF NORTH AMERICA, AFL–CIO Appellant/Cross Appellee,**

v.

**FOSTER WHEELER CORPORATION, and Foster Wheeler Energy Corporation, Appellees/Cross Appellants.**

Nos. 88–5554, 88–5570 and 88–5571.

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit Rule 12(6) Dec. 16, 1988.

Decided Feb. 22, 1989.

Rehearing Denied March 21, 1989.

Orrin Baird, David Elbaor, Connerton, Ray & Simon, Washington, D.C., for Laborers' Intern. Union of North America, AFL–CIO.

Albert B. Jeffers, Morristown, N.J., and Perry M. Rosen, Stuart Rothman, Rogers & Wells, Washington, D.C., for Foster Wheeler Energy Corp.

Vincent J. Apruzzese, Francis A. Mastro, Apruzzese, McDermott, Mastro & Murphy, Springfield, N.J., for Foster Wheeler Corp.

Before GIBBONS, Chief Judge, and HUTCHINSON and HUNTER *, Circuit Judges.

* Judge Hunter participated in the consideration of this appeal but died before the entry of judgment. *See* 28 U.S.C. § 46(d)(1982).

OPINION OF THE COURT

PER CURIAM:

1. This case addresses the propriety of a district court's delegation to an arbitrator of the decision whether a nonsignatory corporation was bound by its subsidiary's national labor agreement. Plaintiff-appellant, cross-appellee Laborers' International Union of North America (the "Union") appeals from a judgment entered in the district of New Jersey holding that on June 6, 1985, defendant-appellee, cross-appellants Foster Wheeler Corp. ("FWC") and Foster Wheeler Energy Corp. ("FWEC") unilaterally repudiated a collective bargaining agreement with the Union (the "National Agreement"). The Union contends that the district court erred because FWC and FWEC could not repudiate a collective bargaining agreement unilaterally, and even if they could, did not do so until August 9, 1985.

2. FWC and FWEC, the defendants in the district court, cross-appeal. FWC contends that the district court erred in compelling arbitration because FWC was not a party to the contract at issue. FWEC contends that the district court erred because unilateral repudiation occurred considerably before June 6, 1985.

I. *FACTS*

3. FWC is an international holding company consisting of various subsidiaries involved in construction. The Union is the bargaining agent for laborers employed by one of FWC's subsidiaries, FWEC. The Union and FWEC are parties to the National Agreement whereby FWEC agreed that most of its work, and the work of FWEC's subsidiaries, would be performed pursuant to the National Agreement. The Union, in return, guaranteed that the work would be performed pursuant to the National Agreement regardless of locale. The National Agreement included a grievance procedure covering "any dispute over the application or interpretation of this Agreement." The National Agreement expires annually on July 15 of each year and is automatically renewed unless specifically terminated or amended by the parties. FWC was not a signatory to the National Agreement.

4. In 1979, FWC formed another wholly-owned subsidiary, Energy Plant Constructors, Inc. ("EPC"), to operate as a construction contractor on a nonunion basis. FWC is thus a "double-breasted" contractor—FWEC is its unionized subsidiary and EPC is its nonunionized subsidiary. EPC is not a party to this case.

5. In the fall 1984, EPC won a contract from the Mobil Oil Exploration and Production Southeast, Inc. ("MOEPSI"), to construct a natural gas processing plant near Mobile, Alabama. EPC hired its first field construction employee at the MOEPSI site on April 2, 1985, but did not apply FWEC's National Agreement with the Union at the MOEPSI site. The Union, FWC, and FWEC corresponded back and forth about this situation in the spring of 1985. On June 3, 1985, the president of EPC wrote to the Union and said that EPC "is not and never has been party to any collective bargaining agreement" with the Union. The Union received the letter on June 6, 1985. The Union responded by suggesting arbitration as to the applicability of the National Agreement, but FWEC refused. On July 11, 1985, FWEC informed the Union that FWEC had no control over EPC. On August 9, 1985, FWEC notified the Union that it was repudiating the National Agreement to the extent that the National Agreement was allegedly applicable to the MOEPSI project.

6. On August 29, 1985, the Union filed this action under the Labor Management Relations Act, 29 U.S.C. § 185(a), and ch. 11, Labor Management Reporting and Disclosure Procedure, 29 U.S.C.A. § 401 et seq., seeking an order compelling FWC and FWEC to arbitrate. The Union also asked for damages in its representative capacity.

7. FWC moved to dismiss the complaint on the grounds that FWC was not a party to FWEC's National Agreement with the Union and, in any event, that FWC had repudiated the National Agreement. FWEC moved to dismiss the complaint on the grounds that the question presented went to representation and thus was for the National Labor Relations Board. The Union cross-moved for summary judgment.

8. On December 9, 1985, the district court held that FWC was bound to arbitrate because the Union had presented sufficient facts which, *if proven*, would demonstrate an alter ego relationship between EPC and FWC. The district court reserved judgment until after the arbitration on whether the National Agreement had ever been lawfully repudiated. In addition, the district court, over the objections of FWC and FWEC, granted the Union limited discovery on the issue referred to arbitration.

9. FWC and FWEC moved for reconsideration which the district court denied. FWC and FWEC then took an interlocutory appeal to this court which we dismissed for lack of appellate jurisdiction. *Laborers' Int'l Union of N. Am. v. Foster Wheeler Corp.*, Nos. 86–5079, 80 (3d Cir. May 1, 1986).

10. On November 10, 1986, an arbitrator held that FWC and FWEC had violated the National Agreement. The arbitrator stated first that FWC and FWEC were alter egos and consequently that FWC was bound by FWEC's National Agreement with the Union. Second, he held that FWEC was the true contractor at the MOEPSI site and that EPC was nothing more than a subcontractor. Third, the arbitrator characterized FWEC and EPC as joint or common employers and thus both bound by the National Agreement.

11. FWC and FWEC moved for summary judgment in the district court, contending that the National Agreement had been repudiated prior to the commencement of work on MOEPSI and that the arbitrator had misinterpreted the National Agreement. The Union cross-moved for enforcement of the arbitrator's award.

12. On October 7, 1987, the district court ruled on all the pending motions and enforced the arbitrator's award with one exception. According to the district court, FWC and FWEC had not repudiated the National Agreement until June 6, 1985, the day the Union received EPC's letter. The district court explicitly rejected the rule enunciated by the NLRB in *John Deklewa & Sons, Inc.*, 283 N.L.R.B. No. 184 (1987), that a prehire agreement cannot be unilaterally repudiated during its term absent an election among bargaining unit employees. The district court held that *Deklewa* was contrary to the Supreme Court's decision in *Jim McNeff, Inc. v. Todd*, 461 U.S. 260, 103 S.Ct. 1753, 75 L.Ed.2d 830 (1983). Soon afterwards, however, this court enforced *Deklewa* in *International Ass'n of Bridge, Structural & Ornamental Iron Workers, Local 3 v. NLRB*, 843 F.2d 770 (3d Cir.), cert. denied, —— U.S. ——, 109 S.Ct. 222, 102 L.Ed.2d 213 (1988).

13. On July 1, 1988, the Union timely initiated this appeal. On July 13, and July 15, 1988, FWEC and FWC respectively cross-appealed. We have jurisdiction over the district court's final order pursuant to 28 U.S.C. § 1291.

## II. *LAW*

14. Because this is an appeal from a summary judgment, we must apply in reviewing this case:

> the same test the district court should have utilized initially. Inferences to be drawn from the underlying facts contained in the evidential sources must be viewed in the light most favorable to the party opposing the motion. The nonmovant's allegations must be taken as true, and when these assertions conflict with those of the movant, the former must receive the benefit of the doubt.

*Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 573 (3d Cir.1976), cert. denied, 429 U.S. 1038, 97 S.Ct. 732, 50 L.Ed.2d 748 (1977); *Gans v. Mundy*, 762 F.2d 338, 340 (3d Cir.), cert. denied, 474 U.S. 1010, 106 S.Ct. 537, 88 L.Ed.2d 467 (1985).

15. Before reaching the other issues, this court must determine whether the district court erred by delegating to an arbitrator the determination whether FWC was FWEC's alter ego and thus a party to FWEC's National Agreement with the Union. EPC was bound by the National Agreement as FWC's subsidiary only if FWC was itself bound by the National Agreement, which applied to "any person, firm or corporation owned or financially controlled by the Employer."

16. The district court in confirming the arbitrator's decision in this case stated that "I remain convinced that the issues of single-employer and alter-ego status are issues within the terms of the agreement and therefore within the jurisdiction of the arbitrator. The issues were properly referred to him."

■ 17. As the law now stands, however, arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed to submit. *AT & T Technologies, Inc. v. Communications Workers of Am.,* 475 U.S. 643, 648, 106 S.Ct. 1415, 1418, 89 L.Ed.2d 648 (1986); *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 582, 80 S.Ct. 1347, 1352–53, 4 L.Ed.2d 1409 (1960). From this it follows that "the question of arbitrability—whether a collective bargaining agreement creates a duty for the parties to arbitrate the particular grievance—is undeniably an issue for judicial determination. Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator." *AT & T,* 475 U.S. at 649, 106 S.Ct. at 1353; *Warrior & Gulf,* 363 U.S. at 582–83, 80 S.Ct. at 1418–19.

18. Since the "duty to arbitrate has a contractual origin, a compulsory submission to arbitration cannot precede judicial determination that the collective bargaining agreement does in fact create such a duty." *AT & T,* 475 U.S. at 649, 106 S.Ct. at 1418–19 (quoting *John Wiley & Sons, Inc. v. Livingston,* 376 U.S. 543, 546–47, 84 S.Ct. 909, 912, 11 L.Ed.2d 898 (1964) (citations omitted)).

19. The requirement for a judicial determination of the obligation to arbitrate may not be circumvented in this case by relying on the parent-subsidiary relationship between FWC and FWEC. This court has stated:

There is no policy of federal law, either legislative or judge made, that a parent corporation is bound by its subsidiary's labor contract simply because it controls the subsidiary's stock and participates in the subsidiary's management.

*American Bell Inc. v. Federation of Tel. Workers,* 736 F.2d 879, 887 (3d Cir.1984); *see also AT & T Information Sys. v. Local 13000 Communications Workers of Am.,* 797 F.2d 147, 149 (3d Cir.1986).

20. The relevant provisions of FWEC's National Agreement with the Union provide:

This agreement shall apply on all construction projects ... performed by the Employer or by any person, firm or corporation owned or financially controlled by the Employer.

Article I, National Agreement, and that arbitration shall be employed to resolve:

any dispute over the application or interpretation of this Agreement ... [including] all grievances and disputes, [but] excluding jurisdictional disputes.

Article XV, National Agreement.

21. The district court sought to distinguish *American Bell* because in that case "the contractual obligations to arbitrate are distinct from the substantive provisions of the agreement." In effect, the district court held that this case involved the application of Article I, so arbitration was appropriate under Article XV.

22. *American Bell* recognizes, however, that it is the role of the district court, not the arbitrator, to pierce the corporate veil and require a parent corporation to participate in arbitration of a contract to which a subsidiary is formally a party. This court stated in *American Bell:*

A court may not disregard at will the formal differences between affiliated corporations, and in fact the requirements for corporate veil piercing, although rather imprecise in their various formulations, are demanding ones. This court has stated the "the appropriate occasion for disregarding that corporate existence occurs when *the court* must prevent fraud, illegality, or injustice, or when recognition of the corporate entity would defeat public policy or shield someone from liability for a crime. *The court* may only pierce the veil in "specific, un-

usual circumstances", lest it render the theory of limited liability useless.

*American Bell*, 736 F.2d at 886 (citation omitted) (emphasis added). *American Bell* fully confirms that the question of whether a parent corporation is bound by its subsidiary's labor agreement is to be decided by a district court, not an arbitrator.

24. The district court's opinion is also contrary to Judge Rosenn's opinion in *Service Hosp., Nursing Home & Pub. Employees Union, Local 47 v. Commercial Property Servs.*, 755 F.2d 499 (6th Cir. 1985). Judge Rosenn of this court, sitting by designation, stated that:

> [T]he court may not order [the parent] to arbitrate absent a finding that [the parent] and [the subsidiary] are alter egos or that the two constitute a single employer or without otherwise determining that the situation is appropriate for piercing the corporate veil.

*Id.* at 504. The district court misinterpreted *Local No. 47* as requiring the district court to determine whether the claim presented is prima facie "appropriate for piercing the veil," but leaving it to the arbitrator to determine whether the veil should actually be pierced. This reading of *Local No. 47* gives the wrong meaning to the word "appropriate."

### III. *CONCLUSION*

24. The district court erred by letting an arbitrator determine whether FWC was an alter ego of FWEC and hence a party to the National Agreement. That question is for the district court, not an arbitrator. Therefore we will vacate the district court's order of December 9, 1985 compelling arbitration and remand this case to the district court for a determination whether FWC was FWEC's alter ego, and bound by FWEC's National Agreement with the Union. The discovery necessary to make this determination was mandated by the district court's second order of December 9, 1985, and limited to the alter ego issue by the district court's letter order of January 14, 1986. We affirm the discovery granted to resolve whether FWC and FWEC were alter egos. The district court's subsequent orders, predicated on the assumption that FWEC was FWC's alter ego, will be vacated. The district court may reconsider them in light of our recent decision in *International Ass'n of Bridge, Structural & Ornamental Iron Workers, Local 3 v. NLRB*, 843 F.2d 770 (3d Cir.), *cert. denied*, —— U.S. ——, 109 S.Ct. 222, 102 L.Ed.2d 213 (1988), if it finds that FWC and FWEC were alter egos.