In re ALLEGHENY HEALTH, EDU-
CATION AND RESEARCH FOUNDA-
TION, Allegheny University of the
Health Sciences, Allegheny University
Medical Practices, Allegheny Hospi-
tals, Centennial and Allegheny Uni-
versity Hospitals–East, Debtors.

Tenet HealthSystem Philadelphia,
Inc., Plaintiff,

v.

National Union of Hospital and Health
Care Employees, AFSCME, AFL—
CIO, District 1199C, and William J.
Scharffenberger, Chapter 11 Trustee
of Allegheny Health, Education and
Research Foundation, Allegheny Uni-
versity of the Health Sciences, Alle-
gheny University Medical Practices,
Allegheny Hospitals, Centennial and
Allegheny University Hospitals–East,
Defendants.

Bankruptcy Nos. 98–25773–MBM,
to 98–25777–MBM.
Adversary No. 00–2176–MBM.

United States Bankruptcy Court,
W.D. Pennsylvania.

July 30, 2001.

Alleghany Health, Education and Research Foundation, Pittsburgh, PA, pro se.

Joseph Stephen Sisca, Mary D. France, Pittsburgh, PA, U.S. Trustee.

Robert G. Sable, McGuire, Woods, LLP, Pittsburgh, PA, Proskauer, Rose, LLP, New York City, Sable, Psateri, Rosen, Gordon, & Adams, Pittsburgh, PA, Douglas Anthony Campbell, Stanley Edward Levine, James Matour, Middleman & Matour, P.C., Philadelphia, PA, David G. Hei-

man, Richard M. Cieri, Jones, Day Reavis & Pogue, Cleveland, OH, for William J. Scharffenberger.

### MEMORANDUM AND ORDER OF COURT

M. BRUCE MCCULLOUGH, Bankruptcy Judge.

**AND NOW,** this **30th day of July, 2001,** upon consideration of

(a) the Complaint of Tenet HealthSystem Philadelphia, Inc. (hereafter "Tenet"), wherein Tenet seeks an order of the Court (i) vacating, setting aside, or modifying a labor arbitration award entered against Tenet on April 4, 2000, by Jeffrey B. Tener, the appointed arbitrator for the American Arbitration Association (hereafter "Arbitrator Tener"), in *In the Matter of the Arbitration between District 1199C, National Union of Hospital and Health Care Employees, AFSCME, AFL—CIO and Tenet Health System,* Case No. 14 390 02056 98Q (Sick Leave Benefits) (hereafter "the Arbitration Award"), and (ii) construing and enforcing this Court's prior orders entered in the above-captioned bankruptcy case dated October 1, 1998, and October 30, 1998 (hereafter collectively "the Sales Orders"), which orders, broadly speaking, approved, *inter alia,* an agreement dated September 29, 1998, for the sale of assets of and by the instant debtor to Tenet and its affiliate (hereafter "the Asset Purchase Agreement" or "the APA") on November 10, 1998 (hereafter also referred to as "the Closing Date"), as well as simultaneously the assumption by the debtor and the assignment to Tenet of certain executory contracts and unexpired leases in accordance with the APA, and which orders, Tenet contends in particular, preclude the Union from henceforth asserting against Tenet the claims that were brought before Arbitrator Tener and dealt with in the Arbitration Award;

(b) the First Amended Complaint of Tenet (hereafter "the First Amended Complaint")—which pleading the Court deems to have been officially filed notwithstanding the absence of a court order granting leave to Tenet to amend its initial Complaint (hereafter "the Complaint") given that the Court orally granted such leave at a hearing on the instant adversary proceeding on July 18, 2000, *see* Court Adv.Proc. Memo, Trustee's Mot. to Dismiss, Docket No. 18—wherein Tenet sets forth two separate counts, the first of which essentially seeks the relief formally sought in the Complaint (hereafter "Tenet's 1st Count"), and the second of which seeks indemnification from the Chapter 11 Trustee for the above-captioned debtor (hereafter "the Trustee") via an indemnity provision found in the APA to the extent that Tenet remains liable for any part of the Arbitration Award (hereafter "Tenet's 2nd Count");

(c) the Arbitration Award, wherein Arbitrator Tener determined that Tenet violated collective bargaining agreements to which District 1199C, National Union of Hospital and Health Care Employees, AFSCME, AFL—CIO (hereafter "the Union") and the instant debtor were formally parties up to November 10, 1998 (hereafter "the Collective Bargaining Agreements" or "the CBAs"), because Tenet, subsequent to November 10, 1998, refused, with respect to the employees covered under the Collective Bargaining Agreements, either to (i) recognize or pay for sick leave that said employees had accumulated up to November 10, 1998, while

said employees were employed with the instant debtor (hereafter "the Accumulated Sick Leave Obligation"), or (ii) pay sick leave to said employees for their first day of absence prospectively from November 11, 1998 (hereafter "the Prospective Sick Leave Obligation") (collectively hereafter "the Sick Leave Obligations");

(d) the Union's counterclaim against Tenet seeking to have the Arbitration Award enforced, as well as Tenet's answer to said counterclaim;

(e) the summary judgment motions filed by Tenet, the Union, and the Trustee in the instant adversary proceeding, as well as the responses by each of the parties to each other's summary judgment motion and the briefs submitted by each party in support of its respective positions; and

(f) the various other submissions by the parties in the instant adversary proceeding;

and subsequent to notice and several hearings on the instant matter, including a hearing on May 8, 2001, regarding each of the summary judgment motions referred to above;

it is hereby ORDERED, ADJUDGED, AND DECREED that:

(a) the Court possesses CORE SUBJECT MATTER JURISDICTION to construe and enforce its own sales orders and, thus, possesses core subject matter jurisdiction to determine whether, and to provide enforcement relief in the event of a determination that, (i) the Sales Orders and, by reference therein the APA, operate to preclude the Union from pursuing the Sick Leave Obligations against Tenet (part of Tenet's 1st Count), and (ii) Tenet is entitled to any indemnification from the Trustee via the Sales Orders and, by reference the APA, in the event,

and to the extent, that Tenet remains liable under the Arbitration Award (Tenet's 2nd Count);

(b) the Sales Orders and the APA are construed such that they OPERATE TO PRECLUDE the Union from pursuing Tenet for payment of the Accumulated Sick Leave Obligation;

(c) the Sales Orders and the APA are construed such that they DO NOT OPERATE TO PRECLUDE the Union from pursuing Tenet for payment of the Prospective Sick Leave Obligation;

(d) the Court possesses CORE SUBJECT MATTER JURISDICTION to set aside the Arbitration Award, and the Arbitration Award is VACATED, to the extent that said award places upon Tenet liability to satisfy the Accumulated Sick Leave Obligation;

(e) the Court lacks SUBJECT MATTER JURISDICTION, and thus Tenet's 1st Count and the Union's counterclaim are DISMISSED WITH PREJUDICE for lack of subject matter jurisdiction to the extent that the same seek, to set aside or enforce the Arbitration Award as it relates to the Prospective Sick Leave Obligation;

(f) Tenet's summary judgment motion with respect to the portions of Tenet's 1st Count and the Union's counterclaim that are not dismissed under the preceding ¶ (e) is GRANTED IN PART consistent with ¶¶ (b) and (d) above, and is DENIED WITH PREJUDICE IN PART consistent with ¶ (c) above;

(g) the Union's summary judgment motion regarding the portions of Tenet's 1st Count and the Union's counterclaim that are not dismissed under the preceding ¶ (e) is GRANTED IN PART consistent with ¶ (c) above, and is DE-

**NIED WITH PREJUDICE IN PART** consistent with ¶¶ (b) and (d) above;

(h) the Trustee's summary judgment motion with respect to Tenet's 2nd Count is **GRANTED,** and Tenet's summary judgment motion with respect to said count is **DENIED WITH PREJUDICE, but only to the extent that** Tenet seeks indemnification from the debtor's bankruptcy estate for liability related to the **Prospective Sick Leave Obligation;** and

(i) Tenet's 2nd Count is **DISMISSED WITHOUT PREJUDICE as being moot** to the extent that Tenet seeks indemnification from the debtor's bankruptcy estate for liability related to the **Accumulated Sick Leave Obligation.**

The rationale for the Court's above decision is set forth in some detail below.

### I.

The parties hotly contest whether, and to what extent, the Court possesses subject matter jurisdiction over the claims and counterclaim pursued in the instant adversary proceeding, which contest the Court finds to be waged with good reason given the relative difficulty which the Court experiences in resolving such jurisdictional issues. However, and as set forth in the two ensuing paragraphs, the Court concludes with relative ease that it possesses core subject matter jurisdiction over that portion of Tenet's 1st Count which seeks an interpretation and enforcement of the Sales Orders, as well as Tenet's 2nd Count.

In Tenet's 1st Count Tenet seeks, *inter alia,* the construction and enforcement of particular provisions of the Sales Orders and, in particular, the Court presumes, Sales Order dat. Oct. 1, 1998, at p. 8 ¶ S, p. 14 ¶ 8, p. 17 ¶ 21 & p. 19 ¶ 26, and Sales Order dat. Oct. 30, 1998, at p. 10 ¶ Q, p. 17 ¶ 6, p. 22 ¶ 19 & p. 25 ¶ 24. Tenet contends that the above provisions and, in particular, ¶¶ 8 and 21 of the Sales Order dat. Oct. 1, 1998 and ¶¶ 6 and 19 of the Sales Order dat. Oct. 30, 1998, operate, in conjunction with relevant portions of the APA, to bar and enjoin the Union from asserting against Tenet any of the Sick Leave Obligations. Tenet contends as much because (a) such provisions, Tenet argues and the Court agrees, bar and enjoin any party from, *inter alia,* asserting against Tenet liabilities which were not assumed by Tenet under the APA and for which the instant debtor thus remains liable, *see, e.g.,* Sales Order dat. Oct. 1, 1998, at ¶ 8 ("With the exception of any liabilities specifically assumed under the … [APA], all persons and entities holding Liens or Claims of any kind and nature against any of the Debtors or with respect to the Assets are hereby barred and enjoined from asserting such Liens and Claims against the Assets or Tenet, its successors, designees (including Restructured University) or assigns, or their respective affiliates, shareholders, members, officers, directors or trustees"), and (b) the Sick Leave Obligations, Tenet maintains, are obligations which were not assumed by Tenet via the APA and for which the debtor thus remains liable. In Tenet's 2nd Count Tenet seeks the construction and enforcement of those provisions in the Sales Orders dealing with its right of indemnification against the instant debtor's bankruptcy estate and, in particular, the Court presumes, Sales Order dat. Oct. 1, 1998, at p. 13 ¶ 7. Tenet contends that said indemnification provision, which references both the APA and a document labelled "the Indemnity Escrow Agreement," entitles Tenet to indemnification from the Trustee to the extent that Tenet remains liable under the Arbitration Award.

The Court has previously held that a bankruptcy court has core subject

matter jurisdiction to construe its own orders. *See Philadelphia Health Care Trust v. Tenet HealthSystem Philadelphia, Inc. (Allegheny Health, Education and Research Foundation),* Bankr.No. 98–25773–MBM, Adv. No. 99–2468–MBM, at 15–16 (Jun. 21, 2000) (citing *In re Franklin,* 802 F.2d 324, 326 (9th Cir.1986); *In re Jenkins,* 993 F.2d 1549, 1993 WL 157390 at *2 (7th Cir.1993); *In re Post v. Ewing,* 119 B.R. 566, 568 (S.D.Ohio 1989); *In re Heine,* 141 B.R. 185, 188 (Bankr.D.S.D. 1992); *In re Betty Owen Schools, Inc.,* 195 B.R. 23, 30 (Bankr.S.D.N.Y.1996)); *see also In re Duplan Corp.,* 209 B.R. 324, 328 (Bankr.S.D.N.Y.1997) ("it is well settled, under both the Act and the Code, that bankruptcy courts have inherent or ancillary jurisdiction to interpret and enforce their own orders, whether or not such jurisdiction is expressly reserved"). A bankruptcy court likewise has core subject matter jurisdiction to enforce its own orders if those orders, at a minimum, involve sales of assets within the bankruptcy court pursuant to 11 U.S.C. § 363. *See Duplan Corp.,* 209 B.R. at 328 (citing numerous cases); *In re New York International Hostel, Inc.,* 157 B.R. 748, 751–752 (S.D.N.Y.1993) (citing *In re Wolverine Radio Co.,* 930 F.2d 1132, 1144–1145 (6th Cir.1991); *In re White Motor Credit Corp.,* 75 B.R. 944, 947 (Bankr.N.D.Ohio 1987)). Because the Sales Orders obviously involve sales of assets within the Court pursuant to § 363, and since, and to the extent that, Tenet's 1st and 2nd Counts seek, and require for their resolution, an interpretation and enforcement of the Sales Orders, the Court has core subject matter jurisdiction over said counts.

■ As for that part of Tenet's 1st Count which seeks to have the Arbitration Award vacated, set aside, or modified, as well as the Union's counterclaim to have the same enforced, the Court possesses at least noncore subject matter jurisdiction over both of those matters if

"... the outcome of th[ose] proceeding[s] could conceivably have any effect on the estate being administered in bankruptcy." "[T]he proceeding[s] need not necessarily be against the debtor or against the debtor's property." " 'A key word in [this test] is conceivable. Certainty, or even likelihood, is not a requirement. Bankruptcy jurisdiction will exist so long as it is possible that a proceeding may impact on the debtor's rights, liabilities, options, or freedom of action or the handling and administration of the bankrupt estate.' "

*Halper v. Halper,* 164 F.3d 830, 837 (3rd Cir.1999) (citations and footnotes omitted). "Furthermore, 'in reaching questions of jurisdiction ..., the Court's analysis does not reach the merits[ of a claim or claims],' *In re Ascher,* 128 B.R. 639, 643 (Bankr. N.D.Ill.1991), which means that this Court, in assessing whether it has at least noncore subject matter jurisdiction over ... [the litigation to set aside or enforce the Arbitration Award], can neither ... [consider simultaneously] the merits of, nor discount absent frivolity, any positions raised by the parties pertaining to said ... [litigation]." *Philadelphia Health Care Trust v. Tenet HealthSystem Philadelphia, Inc. (Allegheny Health, Education and Research Foundation ),* Bankr.No. 98–25773–MBM, Adv. No. 99–2468–MBM, at 6 (Jun. 21, 2000).

■ As an initial matter, the Court holds that it lacks even noncore subject matter jurisdiction over that portion of Tenet's 1st Count seeking to have the Arbitration Award set aside, as well as the Union's counterclaim to have the same enforced, if, and to the extent that, the Sales Orders and the APA are construed such that (a) Tenet, in accordance with the same, assumed liability for the Sick Leave

Obligations, and (b) they consequently permit the Union to assert any of said obligations against Tenet. The preceding holding follows because, if, and to the extent that, the Sales Orders and the APA are construed such that Tenet, in accordance with the same, assumed liability for the Sick Leave Obligations, then (a) such liability is not that of, and cannot be placed upon, the Trustee and the instant debtor's bankruptcy estate, (b) Tenet cannot recover on a claim for indemnification against the instant debtor's bankruptcy estate, and (c) the debtor's bankruptcy estate thus cannot conceivably be impacted by the outcome of litigation regarding whether the Arbitration Award should be set aside or enforced. However, and provided that the Sales Orders and the APA are construed such that Tenet, in accordance with the same, did not assume liability for the Sick Leave Obligations, the Court identifies two reasons why the outcome of the litigation by Tenet and the Union regarding the Arbitration Award could conceivably have an effect on the instant debtor's bankruptcy estate, thereby vesting in the Court at least noncore subject matter jurisdiction over said litigation.

▮▮▮▮▮ First, the entry of a decision setting aside the Arbitration Award, in part or in its entirety, if also coupled with a determination that Tenet, pursuant to the Sales Orders and the APA, did not assume liability for any, or either of, the Sick Leave Obligations, could potentially result in either or both of the Sick Leave Obligations then being placed upon the Trustee and the instant debtor's bankruptcy estate, thereby impacting said bankruptcy estate. Important to the Court's preceding conclusion is the rule that, " 'if a federal court possesses subject matter jurisdiction over an action at the time it is commenced, a subsequent event cannot divest the court of that subject matter juris-

diction,' " *Philadelphia Health Care Trust v. Tenet HealthSystem Philadelphia, Inc.* (*Allegheny Health, Education and Research Foundation* ), Bankr.No. 98–25773–MBM, Adv. No. 99–2468–MBM, at 5 (Feb. 5, 2001) (quoting *In re Celotex Corp.,* 124 F.3d 619, 626 (4th Cir.1997) (citing *Freeport–McMoRan, Inc. v. KN Energy, Inc.,* 498 U.S. 426, 428, 111 S.Ct. 858, 859, 112 L.Ed.2d 951 (1991))). The preceding rule, when applied to the litigation to set aside or enforce the Arbitration Award, dictates that the Court's subject matter jurisdiction over the same is not affected by the September 12, 2000 Stipulation and Agreed Order Approving Settlement between the Trustee and the Union (Docket No. 7842) (hereafter "the Sept. 12, 2000 Stipulation"), which stipulation may or may not operate to relieve the Trustee and the instant debtor's bankruptcy estate from liability for the Sick Leave Obligations in the event that the Arbitration Award is set aside.

Second, the entry of a decision to the effect that the Arbitration Award not be set aside (i.e., a decision that said award should be enforced), if also coupled with a determination that Tenet, pursuant to the Sales Orders and the APA, did not assume liability for any, or either of, the Sick Leave Obligations, would form the basis for an unassailable claim by Tenet for indemnification against the instant debtor's bankruptcy estate, thereby also sufficiently impacting said bankruptcy estate such that noncore subject matter jurisdiction exists. The Union disagrees with the preceding conclusion by the Court and argues fervently that said conclusion is not supported by, and in fact is at odds with, the Third Circuit's decision in *Pacor, Inc. v. Higgins,* 743 F.2d 984, 994–96 (3rd Cir. 1984). Unfortunately for the Union, *Pacor* is factually distinguishable from the instant adversary proceeding for precisely the same reasons that the Court factually distinguished *Pacor* from a prior adver-

sary proceeding that was brought before the Court, which prior proceeding also involved, in particular, the instant bankruptcy case, Tenet as a party plaintiff, and the issue, *inter alia,* of this Court's noncore subject matter jurisdiction in said proceeding predicated upon a potential indemnification claim by Tenet against the Trustee pursuant to the APA. *See Tenet Healthcare Corp. v. Kay Williams (Allegheny Health, Education and Research Foundation ),* 233 B.R. 671, 679–80 & n. 5 (Bankr. W.D.Pa.1999). In *Kay Williams,* the Court held that Tenet's action pending therein was distinguishable from the action involving nondebtor parties in *Pacor* because

> the parties herein are "more intertwined" than were the parties in *Pacor* as evidenced by the fact that, unlike the debtor in *Pacor* (i.e., Johns Manville Corporation), the instant debtors (a) have agreed and *contractually bound* themselves to "indemnify, defend[,] and hold harmless" plaintiffs, and (b) could be affected by the outcome of plaintiffs' remaining counts and, in particular, most likely would be bound by the principles of *res judicata* and collateral estoppel from subsequently challenging any findings or conclusions rendered in the instant litigation over plaintiffs' six remaining counts.

*Kay Williams,* 233 B.R. at 679–80. With respect to the preceding conclusion by the Court in *Kay Williams* regarding the applicability therein of the principles of *res judicata* and collateral estoppel, the Court further expounded in footnote 5 of said decision that

> [t]he Court disagrees with defendants' contention that, much like the debtor in *Pacor,* the instant debtors will not be bound by, and thus may subsequently challenge, any decision or part thereof rendered in plaintiffs' instant litigation

over its six remaining counts. The Court concludes that defendants' position is likely incorrect because (a) the law in Pennsylvania is clear that "both [an] indemnitor and [an] indemnitee are bound[, in a subsequent action between themselves,] by the findings necessary to the judgment in ... [a prior] action" "where ... the indemnitor, with notice of the [prior] action and of the indemnitee's request that he defend it, does not participate in the defense but leaves it to the reasonable efforts of the indemnitee," *Crawford v. Pope & Talbot, Inc.,* 206 F.2d 784, 795 (3rd Cir.1953) (citing *Builders Supply Co. v. McCabe,* 366 Pa. 322, 77 A.2d 368 (1951)); *see also Humble Oil & Refining Company v. Philadelphia Ship Maintenance Co., Inc.,* 444 F.2d 727, 734 (3rd Cir.1971) (citing *Crawford* with approval); *Frank v. McCafferty Ford Company,* 192 Pa.Super. 435, 161 A.2d 896, 898 (1960) (citing three cases prior to *Crawford* for the same proposition as set forth in *Crawford* but with respect to the particular form of indemnity obligation assumed by a seller of property who also warrants title thereto); Restatement (Second) of Judgments § 57 cmt. h (1980) (stating rule similar to that contained in *Crawford* and *McCafferty Ford,* as well as pointing out that "[n]otice alone may be sufficient if the indemnitee shows that the indemnitor could have conducted no better defense of the title than that which was presented by the indemnitee"); Restatement (Second) of Judgments § 43 cmt. e (1980) (referencing Restatement (Second) of Judgments § 57 if a property transfer is accompanied by an express warranty of title by the transferor in favor of the transferee), (b) the instant debtors, as indemnitor to plaintiffs via paragraph 9.01(a) of the Asset Purchase Agreement, were obviously notified of plaintiffs' instant

complaint against defendants herein, (c) the instant debtors, as set forth in said paragraph 9.01(a), agreed not only to indemnify and hold harmless plaintiffs from any pertinent loss *but also to defend* plaintiffs against any such loss, and (d) plaintiffs have clearly undertaken to defend their alleged interests offensively in the instant adversary proceeding against defendants.

*Kay Williams,* 233 B.R. at 680 n. 5. The preceding analysis in *Kay Williams* is, in the Court's view, apposite in the instant adversary proceeding because, in all respects significant to such analysis, both matters are identical. In addition to the foregoing analysis set forth in *Kay Williams,* the Trustee would also be bound by the principles of *res judicata* and collateral estoppel from subsequently challenging any findings or conclusions rendered in the instant adversary proceeding because the Trustee, rather than sitting on the sideline during such proceeding, has actively participated, indeed has actively opposed Tenet, in practically all of the litigation that has occurred thus far.

■ Because the Court concludes, for the reasons just expressed, that the outcome of that portion of Tenet's 1st Count which seeks to have the Arbitration Award vacated, set aside, or modified, as well as the corresponding outcome of the Union's counterclaim to have the same enforced, could conceivably have an effect on the instant debtor's bankruptcy estate—provided that the Sales Orders and the APA are construed such that Tenet, in accordance with the same, did not assume liability for the Sick Leave Obligations—the Court likewise holds that it possesses, subject to the aforesaid condition, at least noncore subject matter jurisdiction over both of those matters.[1]

■ Having concluded that the Court, consistent with the preceding paragraph, conditionally possesses at least noncore subject matter jurisdiction over both that portion of Tenet's 1st Count which seeks to have the Arbitration Award vacated, set aside, or modified, and the Union's counterclaim to have the same enforced, the

1. The Court also rejects any argument that the Union may make, although the Court is admittedly uncertain whether the Union argues, that bankruptcy courts can never possess subject matter jurisdiction over actions to set aside or enforce labor arbitration awards because federal district courts are entrusted with exclusive jurisdiction regarding the same under § 301 of the Labor Management Relations Act, 29 U.S.C. § 185. The Court holds as it does in the preceding sentence because, to the extent that a matter arises under title 11 of the United States Code or arises in or is related to a case under such title 11, such matter may be—and in this circuit has been—referred to bankruptcy courts by the district courts, *see* 28 U.S.C.A. § 157(a) (West 1993); because of § 157(a), a bankruptcy court will possess subject matter jurisdiction with respect to any matter over which the district court would even otherwise possess exclusive jurisdiction if such matter is one that is also described in 28 U.S.C. § 157(a). The preceding conclusion by the Court is borne out by several decisions in which courts have implicitly found that bankruptcy courts have at least noncore subject matter jurisdiction to entertain actions to set aside or enforce labor arbitration awards. *See In re Leslie Fay Cos., Inc.,* 168 B.R. 294, 296 n. 1 (Bankr.S.D.N.Y. 1994) ("The parties have consented to my rendering a final order; thus it is not necessary to linger over the question of whether their dispute is within my core jurisdiction"); *In re Marine Pollution Service, Inc.,* 88 B.R. 588, 592 & 596 (S.D.N.Y.1988), *rev'd on other grounds,* 857 F.2d 91 (2nd Cir.1988) (bankruptcy and district courts presumed that subject matter jurisdiction in the bankruptcy court existed and pondered only whether matter at hand was a core or noncore matter); *cf. In re Pan American Corporation,* 140 B.R. 336 (S.D.N.Y.1992) (bankruptcy court has subject matter jurisdiction to entertain actions seeking to set aside or enforce a labor arbitration award issued pursuant to the Railway Labor Act).

Court must next address the extent to which it possesses such jurisdiction or, put differently, whether such subject matter jurisdiction is core or merely noncore in nature. The Court is aware of case authority for the proposition that a proceeding brought "simply ... to confirm or vacate a labor arbitration award" is noncore in nature because such a proceeding "may be brought routinely by a labor organization or by an employer under 29 U.S.C. § 185 ... [and thus] has a very active 'life of its own' outside the federal bankruptcy laws[, thus dictating that such an action is] ... not a 'core proceeding' within 28 U.S.C. § 157." *Marine Pollution Service*, 88 B.R. at 596. However, the Court holds that when a request to confirm or vacate a labor arbitration award is particularly made within the context of an adversary proceeding brought to enforce sales orders of the Court, such request is no longer routine and one which could also have been brought outside the confines of a bankruptcy case, thereby dictating a conclusion by the Court that such request, under such circumstances, constitutes a core proceeding; such request, because it is brought within the context of a proceeding to enforce sales orders, also likely falls within the reach of 28 U.S.C. § 157(b)(2)(N) as well, making the same a core proceeding. Accordingly, the Court holds that it has core subject matter jurisdiction over both that part of Tenet's 1st Count which seeks to have the Arbitration Award vacated, set aside, or modified, as well as the Union's counterclaim to have the same enforced, but only if, and to the extent that, the Sales Orders and the APA are construed such that they operate to preclude the Union from pursuing Tenet for payment of the Sick Leave Obligations.

## II.

With respect to the merits of Tenet's claims and the Union's counterclaim, the Court concludes, as an initial matter, that it may finally rule at this time via the entry of summary judgment except to the extent that (a) dismissal of said claims and counterclaim is warranted for lack of subject matter jurisdiction, which result will ensue, consistent with the preceding discussion in part I., if, and to the extent that, the Sales Orders and the APA are construed such that Tenet, in accordance with the same, assumed liability for the Sick Leave Obligations, or (b) dismissal of Tenet's 2nd Count is warranted on the grounds that the same is moot. The Court arrives at the preceding conclusion because (a) each of the three parties involved in the instant matter has moved for summary judgment, and (b) the only identifiable disputes between such parties appear to either be legal in nature (i.e., application of law to undisputed fact) or to pertain to the legal effect of provisions in the APA, which latter dispute (i) is for the Court to resolve given that the Court does not identify any relevant latent ambiguities in the APA, *see* 8 P.L.E. *Contracts* §§ 174–176 at 230–239 (West 1971), and (ii) thus may be resolved via the entry of summary judgment.

## III.

As set forth above, Tenet, in its 1st Count, contends that certain of the provisions in the Sales Orders and, in particular, ¶¶ 8 and 21 of the Sales Order dat. Oct. 1, 1998 and ¶¶ 6 and 19 of the Sales Order dat. Oct. 30, 1998, operate, in conjunction with relevant portions of the APA, to bar and enjoin the Union from asserting against Tenet any of the Sick Leave Obligations. Tenet's preceding position is predicated upon arguments, in turn, that (a) such provisions of the Sales Orders bar and enjoin any party from, *inter alia*, asserting against Tenet liabilities which were not assumed by Tenet under the APA and

for which the instant debtor thus remains liable, and (b) the Sick Leave Obligations are obligations which were not assumed by Tenet via the APA and for which the debtor thus remains liable. The Union and the Trustee recognize, and the Court, as set forth above, rules, *see supra* p. 95, that such provisions do, indeed, operate to preclude any person or entity from asserting against Tenet liabilities which were not assumed by Tenet under the APA and for which the instant debtor thus remains liable. However, the Union and the Trustee assert that the Sick Leave Obligations are obligations which were assumed by Tenet under the APA. Thus, the parties' dispute regarding the construction of the Sales Orders essentially reduces to whether Tenet assumed, in accordance with the APA, the Sick Leave Obligations. The Court detects two apparently discrete lines of argument by the parties regarding whether or not Tenet assumed liability under the APA for either of the Sick Leave Obligations.

First, the Court understands Tenet to argue that it did not assume liability under the APA for the payment of the Sick Leave Obligations because, according to Tenet, it (a) retained the right, pursuant to ¶ 5.03(a) of the APA, to unilaterally set the initial terms and conditions of employment after November 10, 1998, for employees covered under the Union, (b) only assumed, as set out in APA ¶ 5.03(a), an obligation, consistent with established law, to bargain in good faith the subsequent terms and conditions of employment after November 10, 1998, for such employees, (c) thus did not become bound as of November 10, 1998, to honor any term or condition contained in the CBAs including, *inter alia*, the Sick Leave Obligations, and (d) did not affirmatively enter into an agreement with the Union, either as an initial or subsequent term or condition of employment vis-a-vis the Union employees, to

undertake to pay either of the Sick Leave Obligations. With respect to the preceding argument by Tenet, Tenet further argues that the same is fully supported by established case precedent. The Union and the Trustee, however, disagree, in particular, with the first three predicates of Tenet's preceding argument, to wit that Tenet (a) retained the right to unilaterally set the initial terms and conditions of employment after November 10, 1998, for the Union employees, (b) needed only to bargain with the Union over subsequent terms and conditions of employment after November 10, 1998, for the Union employees, and (c) did not become bound as of November 10, 1998, to honor any term or condition contained in the CBAs including, *inter alia*, the Sick Leave Obligations. Instead, argue the Union and the Trustee, Tenet, via the APA and the Sales Orders, voluntarily assumed the Collective Bargaining Agreements, which agreements covered all of the Union employees. Because of such assumption by Tenet of the CBAs, the Union and the Trustee contend that, in accordance with the same established case precedent relied upon by Tenet for its position, and consistent with other language in APA ¶ 5.03(a), Tenet (a) is bound to the terms and conditions set forth in the CBAs, among which are the obligations to satisfy the Sick Leave Obligations, (b) thus was not free to set the aforesaid initial terms and conditions of employment for the Union employees, and (c) thus was not free to simply bargain with the Union over the aforesaid subsequent employment terms and conditions for the Union employees.

Second, the Court understands Tenet to argue that the instant debtor and Tenet agreed within the APA that obligations such as the Sick Leave Obligations would not be assumed by Tenet presupposing that (a) the CBAs were assumed by the

instant debtor[2] and assigned to Tenet under 11 U.S.C. § 365 via the Sales Orders and the APA, and (b) Tenet generally assumed the obligations flowing from the CBAs. Because of such agreement between Tenet and the instant debtor, argues Tenet, Tenet consequently did not assume liability for the Sick Leave Obligations. In response to the preceding fallback position by Tenet, the Union and the Trustee contend that the Sick Leave Obligations, as well as all of the other obligations under the CBAs, were, indeed had to be, assumed by Tenet.

### A. *Tenet's Hallmark Argument Predicated Upon the Language in APA ¶ 5.03(a).*

■ The Court will address first Tenet's hallmark argument that, pursuant to APA ¶ 5.03(a), it is not liable for the Sick Leave Obligations because, according to Tenet, it (a) did not become bound as of November 10, 1998, to honor any term or condition contained in the CBAs including, *inter alia*, the Sick Leave Obligations, and (b) did not contractually agree with the Union, either as an initial or subsequent term or condition of employment vis-a-vis the Union, to undertake to pay either of the Sick Leave Obligations. The particular language that Tenet relies on in APA ¶ 5.03(a) as supportive of said hallmark argument is the following:

> Subject to the foregoing and subject to the right of Buyer to set the initial terms and conditions of employment of union employees, Buyer will recognize all existing unions at the Hospitals and will bargain in good faith the subsequent terms and conditions of employment for employees in the bargaining units represented by those unions, to the extent required by law.

APA ¶ 5.03(a).

■ Unfortunately for Tenet, the Court concludes that the CBAs are "Assumed Contracts" within the meaning of the APA, which conclusion is dictated because (a) "Assumed Contracts" is defined in the APA as "the Contracts described in Schedule 2.01(e) as the same may be amended by Buyer [(i.e., Tenet)] as permitted by the Court," APA ¶ 1.01, and (b) the CBAs are described as Assumed Contracts in the initial Schedule 2.01(e), the Amended Schedule 2.01(e), and the Second Amended Schedule 2.01(e). *See* APA Sch. 2.01(e) ¶ 1 (Assumed Contracts are "those described in Part 1—Exhibit A of the Notice of Filing by Tenet ... of Schedule of Executory Contracts and Unexpired Leases to Be Assumed and Assigned Pursuant to ... [APA] filed on September 15, 1998"); Notice of Filing by Tenet, filed Sept. 15, 1998, Docket No. 625, Part 1—Ex. A, at pp. 14/131 ("Union Contract" with "Nat. Union of Hosp. And Health Care Empl."), 17/131 ("collective bargaining agreement" with "AFSCME 1199C") & 60/131 (2 "Collective Bargaining Agreement[s]" with "National Union of Hospital & Health Care E[mployers]"); Notice of Filing by Tenet, filed Nov. 6, 1998, Docket No. 1698 (attached thereto is Amended Schedule 2.01(e), see ¶ 1 & Attachment 1 referenced therein, at pp. 17, 19 & 34, wherein the 4 CBAs are listed as Assumed Contracts); Notice of Filing by Tenet, filed Nov. 10, 1998, Docket No. 1757 (attached thereto is Second Amended Schedule 2.01(e), see ¶ 1, which references Attachment 1 filed with Docket No. 1698). A finding that the CBAs are Assumed Con-

---

**2.** The CBAs could not have been, and were not, assumed by the Trustee via the Sales Orders and the APA because, as of the date upon which said documents originated, the instant debtor was operating as a debtor-in-possession and a Chapter 11 trustee had not yet been appointed.

tracts under the APA is significant because Tenet, pursuant to express language in the APA, agreed not only to purchase "all interests of [the] Sellers [(i.e., the instant debtor)] in the Assumed Contracts," APA ¶ 2.01(e), but also to "assume the Assumed Liabilities." APA ¶ 2.03. Because "Assumed Liabilities" are defined in the APA as, *inter alia*, "all obligations of Sellers [(i.e., the instant debtor)] arising on or after the Closing Date [(i.e., November 10, 1998)] with respect to any period commencing on the Closing Date *under the Assumed Contracts*," APA ¶ 1.01 (emphasis added), Tenet, unless is otherwise expressly indicated in the APA, assumed all obligations of the instant debtor under the CBAs which arose on or after, and which relate to any period commencing on, November 10, 1998. *See also* APA ¶ 5.23(a) ("Buyer [(i.e., Tenet)] ... shall assume all rights *and obligations* of Sellers arising on or after the Closing Date under the Assumed Contracts"). For at least two reasons the Court cannot construe the particular language in APA ¶ 5.03(a) upon which Tenet relies to qualify Tenet's assumption of obligations under the CBAs such that

Tenet effectively never assumed any of such obligations.[3]

First, and as the Union and the Trustee point out, the sentence in APA ¶ 5.03(a) which immediately follows the language in said paragraph upon which Tenet relies explicitly restricts the applicability of said language upon which Tenet relies. In particular, said sentence reads as follows:

> Employees employed under written Contracts will not be offered employment pursuant to this Section, but employment of such employees shall be governed by the terms of the Assumed Contracts, if any, relating to such employees.

APA ¶ 5.03(a). Because the CBAs are Assumed Contracts under the APA, and since the CBAs obviously relate to the Union employees who are covered under the same, the Court concludes that the debtor and Tenet intended for the Union employees' employment to be governed by the terms of the CBAs, which means, in turn, that:

(a) the debtor and Tenet intended for the latter of the two sentences in APA ¶ 5.03(a) at issue herein to apply to the Union employees' employment;[4] and

---

3. The Court rejects outright any possible notion by Tenet that, because all of the assets that Tenet purchased from the debtor were purchased "free and clear of all Encumbrances," APA ¶ 2.01, Tenet purchased all of the debtor's interests in the Assumed Contracts, and thus the CBAs, free and clear of any obligations that arose pre-Closing Date, or which might arise, out of the same. For such a notion to have any merit the obligations that arose pre-Closing Date, or which might arise, out of the CBAs would need to have constituted encumbrances upon the CBAs themselves as of the Closing Date. Unfortunately for Tenet, such a proposition is untenable because (a) an encumbrance is something—a claim, lien, charge, or liability—that attaches to and binds property, *see Black's Law Dictionary* 527 (6th ed.1990), (b) the obligations flowing out of a contract do not attach to and bind the very same contract

when said contract is considered as an asset unless, given that a contract interest constitutes personalty rather than realty, separate action is taken by the obligee, and (c) the Union (i) never took action prior to the Closing Date to attach or bind the CBAs with respect to obligations that existed as of the Closing Date, and (ii) could not possibly have taken action as of the Closing Date to attach or bind the CBAs with respect to obligations that had not arisen prior to the Closing Date.

4. Because the Court concludes that the debtor and Tenet intended for the latter of the two sentences in APA ¶ 5.03(a) at issue herein to apply to the Union employees' employment, the Court also concludes necessarily that (a) the debtor and Tenet operated under the presumption—whether or not well-founded as a matter of law—that the Union employees were employed under written Contracts, per-

(b) the sentence in APA ¶ 5.03(a) which is relied upon by Tenet does not, in any way, thus (i) relate or apply to the employment of the Union employees, or (ii) qualify Tenet's assumption under the APA of obligations under the CBAs such that Tenet effectively never assumed any of such obligations.

■ Second, the Court concludes that a construction of APA ¶ 5.03(a) in the fashion suggested by Tenet (i.e., a construction such that Tenet never assumed any of the obligations under the CBAs) would compel the Court to also conclude that the instant debtor, who bargained with Tenet over the terms of the APA, intended to remain liable on all of the obligations that would arise under the CBAs after November 10, 1998, notwithstanding the debtor's assignment to Tenet of all of the benefits pertaining to the CBAs after such date. The preceding conclusion follows because (a) the CBAs are Assumed Contracts under the APA, (b) the CBAs, as Assumed Contracts—the benefits of which were, under any scenario, assigned to Tenet—were necessarily first assumed by the debtor via 11 U.S.C. § 365, *see* 11 U.S.C.A. § 365(f)(2)(A) (West 1993) ("The trustee[, and thus a debtor-in-possession,] may assign an executory contract … only if … the trustee [or debtor-in-possession] assumes such contract"), (c) such assumption by the debtor under § 365 could only have been *cum onere*, which is to say that the debtor not only accepted the benefits of the CBAs but also assumed all of the burdens (i.e., obligations) attendant thereto, be they past, present, or future, *see National Labor Relations Board v. Bildisco and Bildisco*, 465 U.S. 513, 531–32, 104 S.Ct. 1188, 1199, 79 L.Ed.2d 482 (1984)

(citing *In re Italian Cook Oil Corp.*, 190 F.2d 994, 996–97 (3rd Cir.1951)); *In re Monsour Medical Center*, 11 B.R. 1014, 1018 (W.D.Pa.1981); *In re Maine*, 32 B.R. 452, 455 (Bankr.W.D.N.Y.1983), and (d) the debtor, as a matter of law, remained liable for any obligations that were not assumed by Tenet, the debtor's assignee. *See American Flint Glass Workers Union v. Anchor Resolution Corp.*, 197 F.3d 76, 80–81 (3rd Cir.1999) ("Having shifted fewer than all of the obligations (although it did assign all of the rights) created by the GMU CBAs, Anchor [(i.e., the debtor)] remains liable on those contractual obligations;" hence 11 U.S.C. § 365(k) does not apply to novate obligations of a debtor under a contract that is not assigned by the debtor in its entirety). The Court cannot conjure up any reason why the debtor would have wished to remain liable for all of the obligations related to the CBAs after their assignment to Tenet, particularly given the likely magnitude of such liability, and, indeed, concludes that the debtor would have acted irrationally if it had intended to so remain liable. Of course, the Court will not endeavor to construe any contract such that one of the parties thereto intended to act irrationally and, thus, the Court rejects an interpretation of APA ¶ 5.03(a) or any part thereof (a) that requires the Court to attribute to the instant debtor an irrational intent, and (b) to the effect that the same qualifies Tenet's assumption of obligations under the CBAs such that Tenet effectively never assumed any of such obligations.

The above conclusions of the Court pertaining to the construction of APA ¶ 5.03(a) are consistent with the case precedent relied upon by all of the parties in support of their respective positions, which

---

haps, indeed likely, the CBAs themselves, (b) the debtor and Tenet intended for such contracts to be, and such contracts were, assigned to Tenet, and (c) the Union employees'

consent to such assignment, if necessary, was ultimately gained implicitly by such employees' continued employment with Tenet subsequent to the Closing Date.

case precedent is succinctly summarized as follows:

> If there is a genuine change of employers [i.e., one employer is not the alter ego of the other], but the "employing industry" remains substantially the same, the successor employer:
>
> (a) is bound to recognize and bargain with the representative of his predecessor's employees, ...;
>
> (b) but *is not bound* by his predecessor's bargaining agreement, unless he affirmatively assumes the obligation.

4 Theodore Kheel, *Labor Law* § 17.01[1] at 17–3 (Bender 2000) (citing *NLRB v. Burns International Security Services*, 406 U.S. 272, 92 S.Ct. 1571, 32 L.Ed.2d 61 (1972)); *see also, e.g., Southward v. South Central Ready Mix Supply Corp.*, 7 F.3d 487, 493 (6th Cir.1993) (same, citing four seminal U.S. Supreme Court cases). Therefore, Tenet, pursuant to APA ¶ 5.03(a), was free to set initial, and needed only to bargain with respect to subsequent, terms and conditions of employment post-Closing Date with respect to union employees covered by collective bargaining agreements which were not Assumed Contracts under the APA. However, APA ¶ 5.03(a) did not entitle Tenet to take the same action with respect to the Union employees post-Closing Date because the CBAs are Assumed Contracts under the APA. Consequently, Tenet assumed (a) all obligations of the instant debtor under the CBAs which arose on or after, and which related to any period commencing on, November 10, 1998, unless the APA expressly indicates otherwise, and (b) the Sick Leave Obligations in particular if, and to the extent that, the same arose on or after, and related to a period commencing on, November 10, 1998.[5]

## B. Tenet's Fallback Argument to the Effect that It Assumed Less Than All of the Obligations Flowing from the CBAs.

Having concluded that the CBAs were assumed by the instant debtor and assigned to Tenet under 11 U.S.C. § 365 via the Sales Orders and the APA, and that Tenet generally assumed at least some of the obligations flowing from the CBAs, the Court next addresses Tenet's fallback argument that Tenet did not assume the Sick Leave Obligations in particular because the instant debtor and Tenet agreed within the APA that Tenet would not assume such obligations.

As an initial matter, the Court cannot identify any provision in the APA that expressly, or for that matter that implicitly, qualifies Tenet's general assumption of all obligations of the instant debtor under the CBAs which arose on or after, and which related to any period commencing on, November 10, 1998. As explained above, the Court, notwithstanding Tenet's contrary pleas, does not construe APA ¶ 5.03(a) so that said provision qualifies Tenet's assumption of obligations under the CBAs such that Tenet effectively never assumed any of such obligations. Moreover, and as mentioned above, the Court construes APA ¶ 5.03(a) such that said provision does not, in any way, relate or apply to the employment of the Union employees, which means that said provision also does not qualify Tenet's general assumption of all obligations of the instant debtor under the CBAs which arose on or

---

5. For the sake of convenience and because the Court believes that it also makes more sense logically, the Court deals with and rejects at footnote 10 *infra* another basis by Tenet for its hallmark position that it did not become bound as of November 10, 1998, to honor, and thus was free thereafter to deviate from, any term or condition contained in the CBAs including, *inter alia*, either of the Sick Leave Obligations.

after, and which related to any period commencing on, November 10, 1998. Since the Court cannot detect any such qualifying provision in the APA, the Court is constrained to conclude that Tenet assumed all obligations of the instant debtor under the CBAs which arose on or after, and which related to any period commencing on, November 10, 1998.

Because Tenet assumed all obligations of the instant debtor under the CBAs which arose on or after, and which related to any period commencing on, November 10, 1998, the Court must immediately disagree with Tenet that the debtor and Tenet agreed within the APA that Tenet would not assume liability thereunder for the Prospective Sick Leave Obligation. The preceding conclusion follows because, and the Court does not understand Tenet to dispute that, the Prospective Sick Leave Obligation arose on or after, and relates to the period commencing on, November 10, 1998. Therefore, the Court holds that Tenet assumed liability under the APA for the Prospective Sick Leave Obligation.

With respect to the Accumulated Sick Leave Obligation, whether the debtor and Tenet agreed within the APA that Tenet would not assume such obligation turns upon whether such obligation arose on or after, and relates to the period commencing on, November 10, 1998. If the Accumulated Sick Leave Obligation arose on or after, and relates to the period commenc-

ing on, November 10, 1998, then the Court must (a) find that the debtor and Tenet agreed within the APA that Tenet would assume such obligation, and (b) hold that Tenet assumed liability for such obligation. However, if the Accumulated Sick Leave Obligation either arose, or related to the period, prior to November 10, 1998, then the Court must (a) find that the debtor and Tenet agreed within the APA that Tenet would not assume such obligation,[6] and (b) hold that Tenet did not assume liability for such obligation. As is subsequently set forth below, the parties have raised a myriad of issues regarding when the Accumulated Sick Leave Obligation arose and to which period, pre- or post-Closing Date, said obligation relates.

### (i) *To which period, pre- or post-Closing Date, does the Accumulated Sick Leave Obligation relate?*

The parties passionately dispute whether the Accumulated Sick Leave Obligation arose prior to November 10, 1998, with, and as one would expect, Tenet arguing for a resolution of the issue in the affirmative and the Union and the Trustee lobbying for a negative answer to such issue. Surprisingly, however, the Court observes that none of the parties appear to have focused, either in their written submissions to the Court or in oral hearings before the Court, on the issue of whether the Accumulated Sick Leave Obligation re-

---

**6.** That the debtor and Tenet agreed within the APA that Tenet would not assume liability for obligations which arose, or which related to a period, prior to November 10, 1998—particularly if such obligations involved the subject matter at issue with respect to the Accumulated Sick Leave Obligation—follows not only from APA ¶¶ 1.01 (definition of "Assumed Liabilities"), 2.03, and 5.23(a), but also from the definition of "Excluded Liabilities" in APA ¶ 1.01 ("any and all liabilities of ... [the debtor] other than the Assumed Liabilities, whether known or unknown, fixed or contingent,

recorded or unrecorded") and APA ¶ 2.04(h) ("Under no circumstance shall ... [Tenet] assume or be obligated to pay ... any of the Excluded Liabilities, including but not limited to the following liabilities, which shall be and remain liabilities of ... [the debtor]: (h) except with respect to the Hired Employee Benefits, liabilities or obligations to ... [the debtor's] employees ... arising from or relating to periods prior to Closing (whether or not triggered by the transactions contemplated by this Agreement)").

lates to the period prior to November 10, 1998, the resolution of which issue is potentially equally determinative of whether such obligation was assumed by Tenet under the APA. The Court concludes, in fact, that the Accumulated Sick Leave Obligation relates to the period prior to November 10, 1998, which conclusion the Court arrives at because such obligation stems from Tenet's refusal to recognize or pay for sick leave that the Union employees had accumulated up to November 10, 1998, while said employees were employed with the instant debtor. Critical to the preceding conclusion by the Court is its construction of the phrases "with respect to" and "relating to" as the same appear in, respectively, APA ¶¶ 1.01 (the definition of "Assumed Liabilities") and 2.04(h), such that said phrases mean "related to," "connected with," or "associated with." Although the Court frankly views as self-evident the preceding construction, the Court also arrives at such construction by virtue of the application of the maxim that, "[i]n construing a contract, ... [a]n interpretation which gives effect and meaning to a term is to be preferred over one which makes such term mere surplusage or without effect." 8 P.L.E. *Contracts* § 158 at 199–200. Applying the preceding maxim to the language in APA ¶¶ 1.01 (the definition of "Assumed Liabilities") and 2.04(h), the Court must reject a construction of the phrases "with respect to" and "relating to" such that said phrases are synonymous with the word "arising" as it appears in both APA ¶¶ 1.01 (the definition of "Assumed Liabilities") and 2.04(h). Applying the same maxim to such language, the Court must also reject a construction of such phrases such that they refer to the period in which a corresponding liability is booked (i.e., recorded) for balance sheet purposes because such a construction would render (a) superfluous the phrase "relating to" in APA ¶ 2.04(h) given the

language in APA ¶ 2.04(a) to the effect that "Excluded Liabilities" shall include "all liabilities accrued on the Closing Balance Sheets," and (b) substantively superfluous (i.e., without effect) both phrases given that (i) an obligation or liability cannot, pursuant to generally accepted accounting principles, be booked in a period prior to when it arises, and (ii) whether an obligation or liability is Assumed or Excluded under APA ¶¶ 1.01, 2.03, and 2.04 will, if such phrases refer to the period in which a liability is booked, thus always turn only on when such obligation or liability arose. In light of the foregoing, the Court is left with a construction of APA ¶¶ 1.01 (the definition of "Assumed Liabilities") and 2.04(h) vis-a-vis the Accumulated Sick Leave Obligation such that said obligation relates to the period prior to the Closing Date. Because the Court concludes that the Accumulated Sick Leave Obligation relates to the period prior to November 10, 1998, the Court is constrained to (a) conclude also that the debtor and Tenet agreed within the APA that Tenet would not assume such obligation, and (b) hold that Tenet did not assume liability under the APA for such obligation.

### (ii) *When did the Accumulated Sick Leave Obligation arise?*

■ Since the Court can render the preceding ruling without resolving whether the Accumulated Sick Leave Obligation arose prior to November 10, 1998, the Court need not conclusively resolve such issue. Nevertheless, the Court concludes that the Accumulated Sick Leave Obligation arose prior to November 10, 1998, which conclusion also independently dictates holdings that (a) the debtor and Tenet agreed within the APA that Tenet would not assume such obligation, and (b) Tenet did not assume liability under the APA for such obligation. The Court, in

drawing the preceding conclusion, rejects the position of the Union and the Trustee that (a) the Union employees did not possess a claim against the debtor, and that the debtor did not incur a corresponding liability or obligation, for the sick leave that comprises the Accumulated Sick Leave Obligation until said employees either got sick or retired, at which time, consistent with the CBAs, said employees were entitled to the satisfaction of such obligation, and (b) such claim against the debtor and such liability/obligation of the debtor thus arose post-Closing Date when said employees either became sick or retired.[7] Instead, the Court concludes that, pursuant to the CBAs, the Union employees possessed a contingent claim against the debtor, and the debtor incurred a corresponding contingent liability or obligation, for the sick leave that comprises the Accumulated Sick Leave Obligation simultaneous with, and which grew in amount via, the passage of time during which said employees were employed by the debtor pre-Closing Date. *See* Henry Nicholas Aff., Ex's. 1–5 (portions of CBAs describing Union employees' sick leave benefits). That the Union employees' claims for such sick leave neither vested nor became due and payable until the Union employees either became sick or retired, that such employees did not become sick or retire until after the Closing Date, and that the Accumulated Sick Leave Obligation thus only became fixed from the debtor's point of view after the Closing Date, does not detract from the Court's conclusion that such claims and liability for the Accumulated Sick Leave Obligation

arose, albeit in contingent form, pre-Closing Date. That the Accumulated Sick Leave Obligation was only a contingent obligation or liability of the debtor as of the Closing Date also does not detract from the Court's holding, set forth at the end of the preceding paragraph, that the debtor and Tenet agreed within the APA that Tenet would not assume such obligation because (a) Tenet did not agree to assume "Excluded Liabilities," *see* APA ¶ 2.04, (b) the Accumulated Sick Leave Obligation was not an Assumed Liability since it arose, as well as related to a period, prior to the Closing Date, *see* APA ¶ 1.01 (definition of "Assumed Liabilities"), and (c) "Excluded Liabilities" is defined as "any and all liabilities of ... [the debtor] other than the Assumed Liabilities, *whether ... fixed or contingent.*" APA ¶ 1.01 (definition of "Excluded Liabilities") (emphasis added). Moreover, that the debtor was not in default as of the Closing Date with respect to, and thus was not liable on the Closing Date to make a cure payment pursuant to 11 U.S.C. § 365(b)(1)(A) for, the sick leave that comprises the Accumulated Sick Leave Obligation is easily explained by the fact that the Union employees' claims for such sick leave neither vested nor became due and payable until after the Closing Date; because, and as set forth above, the latter fact does not detract from the Court's conclusion that the Accumulated Sick Leave Obligation arose, albeit in contingent form, pre-Closing Date, neither does the lack of such a cure payment obligation by the debtor so detract. As for the various case precedent cited by each of the parties in support of

---

7. Although the Court recognizes that the terms "obligation" and "liability" are not defined in the APA, and that such terms as they appear within the APA may not be synonymous, the Court, because it views it as frankly preposterous, shall give short shrift to and summarily reject any possible suggestion by the Union and the Trustee that, regardless of what the term "liability" means under the APA, the term "obligation" should be construed for purposes of the APA such that the date upon which the same arises is necessarily determined by reference to the date upon which the same is due to be paid.

their respective positions regarding when the Accumulated Sick Leave Obligation arose, the Court will not devote any more attention to the same in the instant opinion other than to state that (a) the Court's holding is consistent with the Third Circuit's decision in *In re M. Frenville Co., Inc.*, 744 F.2d 332, 336–37 (3rd Cir.1984), because the date upon which the Union employees' right to payment for the sick leave that comprises the Accumulated Sick Leave Obligation arose is determined by reference to contracts, to wit the CBAs, rather than common law, and (b) the other decisional law is either distinguishable from, or is entirely consistent with, the Court's instant ruling.

While the Court determines, in light of the preceding analysis, that it need not address further the issue of when the Accumulated Sick Leave Obligation arose, the Court nevertheless feels obliged to address another argument of the Union and the Trustee that may relate to such issue given that said argument may have been, although the Court is uncertain whether the same was, advanced in response to another issue bearing on whether Tenet assumed the Accumulated Sick Leave Obligation. The argument just referred to, which argument the Court finds to be incredibly strained but the essence of which the Court will attempt to capture and then analyze, seems to make much of the fact that Tenet assumed liability for pre-Closing Date vacation and holiday accumulations of the Union employees specially— i.e., by specifically assuming liability for "the Hired Employee Benefits," *see* APA ¶¶ 1.01 (definition of "Assumed Liabilities") & 2.03, which term is defined as such vacation and holiday accumulations, *see* APA ¶ 1.01 (definition of "Hired Employee Benefits")—rather than by reference to obligations that arose, and which related to a period, commencing on the Closing Date.

In particular, the Union and the Trustee seem to argue that:

(a) Tenet assumed liability for the Hired Employee Benefits because, if Tenet had not done so, the debtor would have needed to pay the Union employees on the Closing Date for their pre-Closing Date vacation and holiday accumulations;

(b) the debtor, absent Tenet's aforesaid assumption, would have needed to pay the Union employees on the Closing Date for their pre-Closing Date vacation and holiday accumulations because (i) said employees' employment terminated under the CBAs on the Closing Date, and (ii) the CBAs require that vacation and holiday accumulations be paid upon the termination of said employees' employment even if such termination occurs prior to the retirement of said employees;

(c) the fact that the debtor became obligated to pay the Union employees on the Closing Date for their pre-Closing Date vacation and holiday accumulations demonstrates that said obligation arose pre-Closing Date;

(d) the debtor, in contrast to the Union employees' pre-Closing Date vacation and holiday accumulations, did not need to pay said employees on the Closing Date for their pre-Closing Date sick leave accumulations;

(e) the debtor did not need to pay the Union employees on the Closing Date for their pre-Closing Date sick leave accumulations notwithstanding the termination of said employees' employment on the Closing Date because (i) the CBAs only require that sick leave accumulations be paid upon the termination of said employees' employment if said termination takes the form of retirement, and (ii) the Union employees' employment was terminated on

the Closing Date other than by their retirement; and

(f) the fact that the debtor did not need to pay the Union employees on the Closing Date for their pre-Closing Date sick leave accumulations demonstrates that the debtor's obligation for such sick leave accumulations arose post-Closing Date rather than pre-Closing Date.

*See* Trustee's Mot. Summ. J. (Docket No. 40), at 11; Union's Br. in Opp. To Tenet's Summ. J. Mot., filed May 1, 2001 (Docket No. 49), at 7–8.

As an initial matter, the Court rejects prong (f) of the preceding argument by the Union and the Trustee—which argument, for the sake of simplicity, the Court shall hereafter refer to as "the Six–Part Argument"—to wit that the fact that the debtor did not need to pay the Union employees on the Closing Date for their pre-Closing Date sick leave accumulations demonstrates that the debtor's obligation for such sick leave accumulations arose post-Closing Date rather than pre-Closing Date. The Court rejects such prong because the fact that payment was not due on the Closing Date for sick leave that had accumulated up to that date can be, and as the Court has already held is, explained by a finding that (a) said employees' rights to such accumulations, which rights arose pre-Closing Date albeit in contingent form, simply had not yet vested as of the Closing Date, and (b) the debtor's corresponding obligation for such sick leave accumulations, which obligation also arose pre-Closing Date albeit in contingent form, simply had not yet become fixed as of the Closing Date. Because said prong (f) appears to constitute the bottom line of the Six–Part Argument, and since the Court rejects the same, the Court can safely hold that said argument does not support the position of the Union and the Trustee that the Accu-

mulated Sick Leave Obligation arose post-Closing Date. However, given the Court's aforesaid uncertainty as to why the Six–Part Argument is advanced, the Court will proceed to address further some of the remaining prongs of said argument.

Particularly interesting to the Court is prong (a) of the Six–Part Argument, to wit that Tenet assumed the Hired Employee Benefits because, if Tenet had not done so, the debtor would have needed to pay the Union employees on the Closing Date for their pre-Closing Date vacation and holiday accumulations. The Court must disagree with said prong because of the following language found in the APA:

At the Closing and unless otherwise waived in writing by ... [the debtor, Tenet] shall deliver:

(d) to ... [the debtor] an assumption agreement, fully executed by ... [Tenet], in form and substance acceptable to ... [the debtor], pursuant to which ... [Tenet] shall assume the future payment and performance of the Assumed Liabilities[, among which are the Hired Employee Benefits]; *provided however, that ... [Tenet] shall retain from the Purchase Price that sum necessary to pay the Hired Employees Benefits.*

APA ¶ 8.03(d) (emphasis added); *see also* APA ¶ 2.05(b) ("At closing, Buyer shall deliver to Sellers the balance of the Purchase Price *minus* ... the Hired Employees Benefits"). The preceding language from the APA prompts the Court to conclude instead that Tenet specially assumed the obligation for the Hired Employee Benefits, which obligation would have otherwise remained with the debtor, only because the debtor essentially gave Tenet the funds to satisfy such obligation; indeed, since said obligation obviously relates to the period pre-Closing Date during which the debtor operated the assets that

were ultimately sold to Tenet, what reason would Tenet have had to assume liability for such obligation unless it was also given the funds to satisfy the same?[8] Furthermore, the Court can only surmise that the debtor and Tenet entered into the arrangement as just described because the debtor concluded that, consistent with the CBAs, it did not need to pay the Union employees' pre-Closing Date vacation and holiday accumulations on the Closing Date; indeed, if the debtor had concluded that the obligation for said vacation and holiday accumulations was due and payable on the Closing Date, then the debtor would not have had any reason not to satisfy such obligation itself by direct payment then to the Union employees. Of course, since prong (c) of the Six–Part Argument is predicated on the debtor having needed to pay the Union employees' pre-Closing Date vacation and holiday accumulations on the Closing Date, if the debtor was correct that such payment was not due on the Closing Date, then said prong (c) also fails by necessity.

Also interesting to the Court is the contention by the Union and the Trustee that the Union employees' employment terminated under the CBAs on the Closing Date, which contention appears in prongs (b) and (e) of the Six–Part Argument. The Court frankly is astonished that the Union, in particular, would contend as much because, if the Union employees' employment terminated under the CBAs on the Closing Date, then said employees' pre-Closing Date sick leave accumulations simply lapsed pursuant to the CBAs, *see*

Henry Nicholas Aff., Ex's. 1–5 (portions of CBAs describing Union employees' sick leave benefits), which would mean that neither the debtor nor Tenet properly is liable for the Accumulated Sick Leave Obligation. Because it does not make any sense for the Union to advance an argument that essentially runs counter to the crux of the Union's cause in the instant adversary proceeding, the Court could simply pass off prongs (b) and (e) and, for that matter, the entire Six–Part Argument that is, in part, predicated upon such prongs, as having been inadvertently advanced by the Union. However, the Court rejects the aforesaid prongs (b) and (e) as well because the Court has already determined in a prior part of the instant opinion that the debtor and Tenet intended for the Union employees' contracts of employment to be, and thus such contracts were, assigned to Tenet, *see supra* note 4, which determination is irreconcilable with a determination that the Union employees' employment actually terminated under the CBAs on the Closing Date.

(iii) *The issue of assumption cum onere and the instant applicability of the decision in American Flint Glass Workers Union.*

In addition to the various arguments advanced by the Union and the Trustee in favor of their position that the Accumulated Sick Leave Obligation arose post-Closing Date—all of which the Court rejects as set forth above—the Court understands the Union and the Trustee to make a couple of additional arguments to the ulti-

8. That the debtor did not agree in the APA to give Tenet the funds to satisfy the Accumulated Sick Leave Obligation also fuels the Court's holding that Tenet did not assume such obligation under the APA. The preceding conclusion follows because, and as is the case with respect to the Hired Employee Benefits, the Court cannot conjure up any reason why

Tenet, absent an advance of funds to satisfy the Accumulated Sick Leave Obligation, would have wished to assume liability for the same given that, and as the Court has already concluded, such obligation relates to the period pre-Closing Date during which the debtor operated the assets that were ultimately sold to Tenet.

mate effect either that (a) Tenet could not, so it must not, have assumed less than the whole of each of the CBAs (i.e., assumption of the CBAs less the Accumulated Sick Leave Obligation) under the APA, or (b) Tenet's incomplete assumption of each of the CBAs under the APA was improper and is objectionable if such assumption actually occurred. Such arguments, in particular, may be summarized as follows:

(a) Tenet assumed the CBAs under the APA but it could only have assumed the CBAs *cum onere* consistent with the decisions such as those in *Italian Cook Oil Corp., Bildisco, Monsour Medical Center,* and *Maine,* which is to say that Tenet was not free to assume the CBAs unless it did so completely (i.e., assumption of all benefits and all burdens pertaining to the CBAs, including the Accumulated Sick Leave Obligation); and

(b) Tenet assumed the CBAs under the APA but, consistent with the Third Circuit's decision in *American Flint Glass Workers Union,* Tenet was not free to assume the CBAs less the Accumulated Sick Leave Obligation unless (i) Tenet expressly conditioned its purchase of assets from the debtor on Tenet's ability to assume the CBAs less the Accumulated Sick Leave Obligation, and (ii) the Union consented or waived its objection to such incomplete assumption, which consent or waiver by the Union never occurred.

■ As an initial matter, the Court is constrained to reject outright any of these additional arguments to the extent that they are advanced as a ground for objection to what the Court has determined was an incomplete assumption by Tenet under the APA of each of the CBAs because (a) the Union, although it received notice of the APA and the hearings to approve the

same, failed to object at such hearings to the Court's approval of the APA and, in particular, to the Court's approval of Tenet's incomplete assumption thereunder of each of the CBAs, (b) the Sales Orders, which approved the APA and, in particular, Tenet's incomplete assumption thereunder of each of the CBAs, are final orders, which fact, when coupled with the notice to the Union as just described, means that, by virtue of collateral estoppel if not *res judicata,* the Union can no longer press, and the Court is not now free to entertain, collateral attacks upon said orders via objections by the Union to that which was approved by the Court therein, and (c) the Trustee, since it stepped into the shoes of the debtor, most certainly is not free to object to the Sales Orders, which orders were consented, and thus could not have been objected, to by the debtor. Therefore, these additional arguments can only be effectively advanced by the Union and the Trustee at this time as a tool for the Court to consider when it construes the provisions of the APA relevant to whether Tenet assumed the Accumulated Sick Leave Obligation; put differently, the Court need only presume that the Union and the Trustee contend, for the reasons advanced in each of the aforesaid arguments, that Tenet could not, so it must not, have incompletely assumed each of the CBAs under the APA. Unfortunately for the Union and the Trustee, the Court holds that the relevant provisions of the APA—i.e., APA ¶¶ 1.01 (definitions of "Assumed Liabilities" and "Excluded Liabilities"), 2.03, 2.04(h), and 5.23(a)—are only susceptible of one particular construction as they relate to the Accumulated Sick Leave Obligation, to wit that Tenet did not assume liability under the APA for such obligation;[9] the Court holds as it does

9. Because the Court finds that, with respect to the Accumulated Sick Leave Obligation,

because the Court finds that any other construction, *inter alia,* would (a) render superfluous the phrases "with respect to" and "relating to" as the same appear respectively in APA ¶¶ 1.01 (definition of "Assumed Liabilities") and 2.04(h), *see supra* pp. 106–07, and (b) distort the word "arising" as the same appears in APA ¶¶ 1.01 (definition of "Assumed Liabilities") and 2.04(h). *See supra* pp. 107–11. Therefore, the Court need not, and thus will not, resort to additional extraneous tools of construction and, thus, must reject the argument by the Union and the Trustee, to wit that Tenet must have, and thus did, assume the Accumulated Sick Leave Obligation because (a) Tenet could only have assumed the CBAs *cum onere,* (b) Tenet did not expressly condition its purchase of assets from the debtor on Tenet's ability to assume the CBAs less the Accumulated Sick Leave Obligation, and (c) the Union neither consented nor waived its objection to such an incomplete assumption by Tenet of each of the CBAs. Since the Court rejects for all purposes the two arguments of the Union and the Trustee summarized in the preceding paragraph, and since the Court can do so without reaching the merits of either argument, the Court need not resolve such arguments on the merits. Nevertheless, the Court wishes to say a few words with respect to the merits of each such argument.

First, with respect to the *cum onere* argument of the Union and the Trustee, the Court rejects the same because the Court holds, as a matter of law, that the assignee of a bankruptcy trustee or a debtor-in-possession, such as is Tenet in the instant matter, is free to assume less than all of the obligations that accompany a contract which is assigned to said assignee. The Court agrees with the Union and the Trustee that (a) if a bankruptcy trustee or a debtor-in-possession wishes to assume a contract under 11 U.S.C. § 365, then such assumption must be *cum onere,* and (b) cases such as *Italian Cook Oil Corp., Bildisco, Monsour Medical Center,* and *Maine* all hold as much. Unfortunately for the Union and the Trustee, the Court finds that neither the cases just referred to, nor others that the Court has read, apply the *cum onere* concept to the assumption of obligations by a subsequent assignee of a bankruptcy trustee or debtor-or-in-possession; instead, said cases uniformly involve only the issue of whether a trustee or debtor-in-possession may incompletely assume a contract under § 365. Because the Court does not understand § 365, via the *cum onere* concept, to modify general state law regarding the assignment of contracts once they have been assumed under § 365 by a bankruptcy trustee or a debtor-in-possession, and since under state law an assignor and an assignee are free to agree that said assignee will not assume any, or certain of, the obligations that accompany an assigned contract, *see* 3 P.L.E. *Assignments* § 76 at 202 (West 1957) (citing, *inter alia, Art Metal Const. Co., for Use of McCloskey & Co. v. Lehigh Structural Steel Co.,* 38 F.Supp. 530, 531 (E.D.Pa.1941), ·to the effect that "[t]he assignment of a bilateral executory contract will be interpreted as an assumption of the assignor's duties by the assignee, *in the absence of circumstances showing a contrary intention* "); 3 E. Allan Farnsworth, *Farnsworth on Con-*

the relevant provisions of the APA are only susceptible of a construction such that Tenet did not assume liability thereunder for such obligation, the Court cannot accept an argument by the Union that the language utilized in the APA failed to place the Union on notice that Tenet was not assuming liability for obligations such as, and including in particular, the Accumulated Sick Leave Obligation.

*tracts* § 11.11 at 135 & 137–38 (2nd ed. 1998) ("Thus, if a party transfers the entire contract, assigning rights as well as delegating performance, an assumption of those duties by the transferee will be inferred from the acceptance of the transfer, *unless the language or the situation indicates the contrary* "); Restatement (Second) of Contracts § 328(2) (1979) (same); 6 Am.Jur.2d *Assignments* § 161 (1999), the Court consequently holds that the assignee of a bankruptcy trustee or a debtor-in-possession is free to assume less than all of the obligations that accompany an assigned contract. The distinction just explained regarding the *cum onere* concept—i.e., such concept applies only to an assumption of a contract by a trustee or a debtor-in-possession under § 365 and not to the assumption of obligations that accompany such contract by the subsequent assignee of said trustee or debtor-in-possession—is justified, in the Court's view, because assumption by a trustee or debtor-in-possession under § 365 is not accomplished via an arm's length transaction whereas assumption by such entity's subsequent assignee is the result of an arm's length transaction. In light of the foregoing, the Court concludes that, the *cum onere* concept notwithstanding, the instant debtor and Tenet, as the debtor's assignee, were free to, and did, agree in the APA that Tenet would accept assignment of the CBAs but that Tenet would not assume certain of the obligations under the CBAs such as, in particular, the Accumulated Sick Leave Obligation.[10] Of course, to the extent that Tenet did not assume an obligation under the CBAs, § 365(k) is rendered inapplicable and the debtor's bankruptcy estate remains liable for such obligation. *See American Flint Glass Workers Union,* 197 F.3d at 80–81. As well, provided that the Union has not stipulated away its pertinent rights against the debtor via the Sept. 12, 2000 Stipulation, the Union may insist upon the timely satisfaction of those obligations not assumed by Tenet and the liability for which is consequently retained by the debtor before the Union must undertake to provide the benefits under the CBAs that were assigned by the debtor to Tenet. *See* 6 Am.Jur.2d *Assignments* § 164 (1999) ("Because the assignee takes the right assigned with all the burdens to which it was subject in the hands of the assignor, if the assignee undertakes to enforce the right by an action, he or she must show that any applicable conditions or burdens have been performed, either by the assignor or by himself"); *Loegler v. C.V. Hill & Co.,* 238 Ala. 606, 193 So. 120, 121 (1940) (citing, *inter alia, Blue Star Nav. Co. v. Emmons Coal Mining Corp.,* 276 Pa. 352, 120 A. 459, 460 (1923), and 5 Corpus Juris 977, to the effect that "an assignment ordinarily does not impose on the assignee the

---

10. Because the Court concludes that the debtor and Tenet were free to, and did, agree to an incomplete assignment of the CBAs such that Tenet did not assume liability for the Accumulated Sick Leave Obligation, the Court dismisses another fallback strategy of Tenet wherein Tenet (a) agrees with the Union and the Trustee that the CBAs could only have been completely assigned to Tenet (i.e., Tenet could only have assumed the CBAs' attendant obligations *cum onere* ), (b) argues consequently that no part of the CBAs was ever effectively assigned to Tenet given that the APA memorializes only an incomplete assignment of the CBAs, (c) maintains consequently that it did not become bound as of November 10, 1998, to honor any term or condition contained in the CBAs including, *inter alia,* either of the Sick Leave Obligations, and (d) contends consequently that, pursuant to APA ¶ 5.03(a), it was free to set initial, and needed only to bargain with respect to subsequent, terms and conditions of employment post-Closing Date with respect to the Union employees. *See* Tenet Br. in Opp. To Summ.J.Mot. of Union & Trustee, filed May 1, 2001 (Docket No. 51), at 23.

personal duty to fulfill the obligations imposed by the contract on his assignor[, b]ut if he brings action on the instrument his right is limited by the burdens and obligations which his assignor thereby assumed"); *Welling v. Crosland,* 129 S.C. 127, 123 S.E. 776, 780 (1924) (quoting, *inter alia, Blue Star* and 5 Corpus Juris 977; the latter authority is quoted as follows: "But, on the other hand, it is held that the assignee of a contract, who acquires the right to enforce the executory provisions thereof, or to recover damages for the breach, assumes the burdens which are imposed upon the assignor by the contract as the consideration for the performance by the other party. *If the assignee expressly promises in the contract of assignment, upon a valuable consideration, to pay third parties, such third parties may sue him on his promise.*"); *Blue Star,* 120 A. at 460 (quoting 5 Corpus Juris 977 but somewhat out of context by only quoting the first sentence from said authority reproduced in the preceding parenthetical and omitting the second such sentence; nevertheless, the *Blue Star* court only holds essentially that the obligee to the assigned contract may setoff against the assignee a burden for which the assignor remains solely liable if the assignee sues said obligee—the *Blue Star* court did not hold that the obligee was entitled to affirmatively sue the assignee for the burden which remained solely the obligation of the assignor).

Second, the Court disagrees with the Union and the Trustee that the decision in *American Flint Glass Workers Union* dictates that Tenet was not free to assume the CBAs less the Accumulated Sick Leave Obligation unless (a) Tenet expressly conditioned its purchase of assets from the debtor on Tenet's ability to so incompletely assume the CBAs, and (b) the Union consented, or waived any objection that it might have had, to such incomplete assumption. The Court so disagrees because the Court concludes that the Union and the Trustee misinterpret *American Flint Glass Workers Union.* In particular, the Union and the Trustee contend that the Third Circuit held in *American Flint Glass Workers Union* that the assignee of a collective bargaining agreement therein, who was also the purchaser of assets from the debtor/assignor therein, successfully assumed less than all of the obligations that accompanied said collective bargaining agreement only because (a) said purchaser/assignee expressly conditioned its purchase of assets from said debtor/assignor on said purchaser/assignee's ability to so incompletely assume said collective bargaining agreement, and (b) the union who was a party to said collective bargaining agreement waived its rights as against said purchaser/assignee with respect to the obligation that said assignee did not wish to assume (i.e., said union consented to such incomplete assumption). Unfortunately for the Union and the Trustee, the Court understands the Third Circuit in *American Flint Glass Workers Union* to (a) broadly hold only that if, and to the extent that, a debtor/assignor and its assignee intend an incomplete assignment of all rights and obligations to a contract (i.e., something other than a "true assignment"), § 365(k) does not apply and said debtor/assignor remains liable for whatever obligation is not assumed by said assignee, *see American Flint Glass Workers Union,* 197 F.3d at 80–81, and (b) have attached significance to the aforesaid express condition of the purchaser/assignee therein and the aforesaid waiver of rights by the Union (whatever those rights may have been) therein only because the same were indicative of an intent between said purchaser/assignee and the debtor/assignor therein to incompletely assign the collective bargaining

agreement at issue therein.[11] *See Id.* Therefore, the Court can hold, consistent with *American Flint Glass Workers Union,* that if Tenet expressly conditioned its purchase of assets from the debtor on Tenet's ability to incompletely assume the CBAs, and if the Union consented, or waived any objection that it might have had, to such incomplete assumption, that the same are sufficient, but not necessary, conditions for the Court to find that the debtor and Tenet intended to incompletely assign the CBAs. Because a finding of the presence of such express conditioning by Tenet and such consent or waiver by the Union is not necessary to a finding by the Court that the debtor and Tenet intended to incompletely assign the CBAs, however, and since the debtor and Tenet clearly evinced by other means an intent to incompletely assign the CBAs—i.e., by virtue of the language found in APA ¶¶ 1.01 (definitions of "Assumed Liabilities" and "Excluded Liabilities"), 2.03, 2.04(h), and 5.23(a)—the Court can also hold, consistent with *American Flint Glass Workers Union,* that the debtor incompletely as-

signed the CBAs to Tenet such that Tenet did not assume liability for the Accumulated Sick Leave Obligation, thereby disabling the operation of § 365(k) with respect to such obligation so that the debtor remains liable for such obligation absent a stipulation to the contrary between the debtor and the Union.[12]

Third, the Third Circuit in *American Flint Glass Workers Union* held that when a trustee or a debtor-in-possession incompletely assigns a collective bargaining agreement within the context of a sale of substantially all of the debtor's assets such that the assignee of such agreement does not assume all of the obligations attached to said agreement, such incomplete assignment "constitutes an attempt to effect an alteration of the" collective bargaining agreement. *See Id.* at 81–82. Such an attempt to alter a collective bargaining agreement, according to the Third Circuit, requires the debtor to comply with the procedures contained in 11 U.S.C. § 1113, failing which the debtor shall be deemed to

**11.** Interpreting *American Flint Glass Workers Union* in this fashion is also desirable, in the Court's view, because (a) such an interpretation can readily be reconciled with general state contract law regarding the transfer of contracts (i.e., assignment of rights, delegation of performance, and assumption by an assignee of an assignor's duties) given that such law does not require, as a necessary condition of an assignee's incomplete assumption of duties, either that (i) such assignee expressly condition an assignment of a contract to itself upon its ability to incompletely assume said contract, or (ii) the obligee to an assigned contract consent or waive its objection to an incomplete assignment of said contract, and (b) "collective bargaining agreements[, which were at issue in *American Flint Glass Workers Union,*] are contracts that remain subject to the general principles of contract and agency law." Kheel, *supra* p. 27, § 26.04[3] at 26–86 to 26–88 ("Despite its uniqueness, the collective bargaining agreement is intended to be a contract between the

union and the employer; it is negotiated as a contract, is designated a contract, and is made enforceable as a contract by Section 301 of the LMRA").

**12.** Although not necessary to the Court's ruling given the text of the instant opinion that precedes this footnote, the Court nevertheless also finds that (a) Tenet expressly conditioned its purchase of assets from the debtor on Tenet's ability to, *inter alia*, incompletely assume the CBAs (i.e., assume the CBAs less the obligation for Excluded Liabilities such as the Accumulated Sick Leave Obligation), *see* Sales Order dat. Oct. 1, 1998, at p. 8 ¶ S, and Sales Order dat. Oct. 30, 1998, at p. 10 ¶ Q, and (b) the Union at least arguably consented, or waived any objection that it might have had, to Tenet's incomplete assumption of the CBAs by virtue of the Union's failure to object to the Court's approval of the APA coupled with the Union's notice of the hearings to approve the same.

have violated § 1113(f).[13] *See Id.* Applying the preceding holding to the debtor's assignment of the CBAs such that Tenet did not assume liability for the Accumulated Sick Leave Obligation, the Court finds that the debtor arguably violated § 1113(f) by entering into such incomplete assignment via the APA. Of course, had the Court been timely apprised of such a potential violation, the same might ultimately have prompted the Court to withhold its approval of the APA. However, and unfortunately for the Union and the Trustee, an objection to the Court's approval of the APA was never, and cannot now be, lodged vis-a-vis the application of § 1113(f) to the debtor's assignment of the CBAs via the APA. Furthermore, even if future Rule 60(b) relief were to be sought by the Union via Fed.R.Bankr.P. 9024 on the basis of such a potential § 1113(f) violation, the same would not be granted such that the Court would now impose upon Tenet liability for the Accumulated Sick Leave Obligation because a § 1113(f) violation, had it been detected by the Court prior to its approval of the APA, would not have prompted the Court to grant such approval coupled with a forced imposition of such liability upon Tenet; instead, the Court would simply have withheld its approval of the APA, which agreement likely would have been amended such that the debtor either explicitly retained liability for payment of the Accumulated Sick Leave Obligation or forwarded funds to Tenet sufficient for Tenet to satisfy such obligation in the future.

### (iv) *The meaning of APA ¶ 3.20(f).*

█ Finally, the Union and the Trustee contend that a construction by the Court of relevant provisions in the APA such that Tenet did not assume liability for the Accumulated Sick Leave Obligation will be internally inconsistent with another provision of the APA, namely APA ¶ 3.20(f). APA ¶ 3.20(f) provides that "the assignment of the Contracts to and assumption of such Contracts by Buyer (or, in the case of University Assets, by the Restructured University) will not result in any penalty, premium or variation of the rights, remedies, benefits or obligations of any party thereunder." APA ¶ 3.20(f). As explained above, the Court construes APA ¶¶ 1.01 (definitions of "Assumed Liabilities" and "Excluded Liabilities"), 2.03, 2.04(h), and 5.23(a) such that Tenet did not assume liability for the Accumulated Sick Leave Obligation. Unfortunately for the Union and the Trustee, however, the Court concludes that such construction does not conflict with APA ¶ 3.20(f). In fact, the Court can readily reconcile its aforesaid construction with APA ¶ 3.20(f) because such construction neither penalizes the Union nor varies the Union's rights, remedies, or benefits with respect to the CBAs given that (a) the debtor retains liability for the Accumulated Sick Leave Obligation, and (b) the Union, if, and to the extent that, it has not stipulated away its pertinent rights against the debtor via the Sept. 12, 2000 Stipulation, may insist upon the timely satisfaction of the Accumulated Sick Leave Obligation before the Union must undertake to provide the benefits under the CBAs that were assigned by the debtor to Tenet. *See supra* pp. 114–15. Furthermore, that the APA, when construed such that Tenet did not assume liability for the Accumulated Sick Leave Obligation, may arguably operate to alter the CBAs for purposes of 11 U.S.C.

---

13. 11 U.S.C. § 1113(f) provides that "[n]o provision of this title shall be construed to permit a trustee to unilaterally terminate or alter any provisions of a collective bargaining agreement prior to compliance with the provisions of this section." 11 U.S.C.A. § 1113(f) (West 1993).

§ 1113(f), at least given the decision in *American Flint Glass Workers Union,* does not also mean—and the Court holds, in fact, that it does not mean—that the APA, so construed, also varies the Union's rights, remedies, or benefits with respect to the CBAs for purposes of APA ¶ 3.20(f). The preceding holding by the Court follows because the Court simply does not construe the word "variation" as that term appears in APA ¶ 3.20(f) such that it encompasses a § 1113(f) alteration of the CBAs that is effected, pursuant to *American Flint Glass Workers Union,* only by virtue of an incomplete assignment in bankruptcy of the CBAs; put differently, the Court construes the word "variation" as that term appears in APA ¶ 3.20(f) such that it is dissimilar, at least in some respects, to the word "alter" as that term appears in § 1113(f). The Court arrives at the preceding construction of APA ¶ 3.20(f) because (a) *American Flint Glass Workers Union* constitutes the sole authority for the proposition that an incomplete assignment of a collective bargaining agreement during a bankruptcy *per se* constitutes an attempt to effect an alteration of the same for purposes of § 1113(f), and (b) the debtor and Tenet did not take into account, indeed could not have taken into account, the decision in *American Flint Glass Workers Union* when each combined to draft the APA given that such decision was not even rendered until more than one year after the APA was executed and approved by this Court. *See American Flint Glass Workers Union v. Anchor Resolution Corp.,* 197 F.3d 76 (3rd Cir.1999); *supra* p. 93 (APA executed Sept. 29, 1998, and approved on Oct. 1, 1998, and Oct. 30, 1998).

## IV.

For the reasons set forth in part III. above, the Court holds that Tenet assumed liability under the APA for the Prospective Sick Leave Obligation, but that Tenet did not assume liability under the APA for the Accumulated Sick Leave Obligation.

Because Tenet assumed liability under the APA for the Prospective Sick Leave Obligation, and since the Sales Orders only preclude a party from asserting against Tenet liabilities which Tenet did not assume under the APA, the Sales Orders do not operate to bar and enjoin the Union from pursuing Tenet for payment of the Prospective Sick Leave Obligation. Therefore, the Union did not violate the Sales Orders by obtaining the Arbitration Award as it relates to the Prospective Sick Leave Obligation.

However, because Tenet did not assume liability under the APA for the Accumulated Sick Leave Obligation, and since the Sales Orders and, in particular, ¶¶ 8 and 21 of the Sales Order dat. Oct. 1, 1998 and ¶¶ 6 and 19 of the Sales Order dat. Oct. 30, 1998, operate to bar and enjoin any party from asserting against Tenet liabilities which Tenet did not assume under the APA, the Sales Orders operate to preclude the Union from pursuing Tenet for payment of the Accumulated Sick Leave Obligation. Therefore, the Union has violated the Sales Orders by obtaining the Arbitration Award as it relates to the Accumulated Sick Leave Obligation.

Consistent with a prior holding of the Court in part I. above, the Court holds that, because the Sales Orders do not operate to preclude the Union from pursuing Tenet for payment of the Prospective Sick Leave Obligation, the Court lacks even noncore subject matter jurisdiction over Tenet's 1st Count and the Union's counterclaim to the extent that the same seek to set aside or enforce the Arbitration Award as it pertains to the Prospective Sick Leave Obligation. Accordingly, Tenet's 1st Count and the Union's counterclaim, to

the extent that the same seek to set aside or enforce the Arbitration Award as it pertains to the Prospective Sick Leave Obligation, are dismissed with prejudice for lack of subject matter jurisdiction.

Because Tenet assumed liability under the APA for the Prospective Sick Leave Obligation, the debtor is consequently not liable for such obligation, which conclusion dictates that Tenet also may not recover on its claim for indemnification from the Trustee under Tenet's 2nd Count to the extent that such claim pertains to the Prospective Sick Leave Obligation. Accordingly, the Trustee's summary judgment motion with respect to Tenet's 2nd Count is granted, and Tenet's summary judgment motion with respect to said count is denied with prejudice, to the extent that Tenet seeks indemnification from the debtor's bankruptcy estate for liability related to the Prospective Sick Leave Obligation.

However, and consistent with another prior holding of the Court in part I. above, the Court holds that, because the Sales Orders operate to preclude the Union from pursuing Tenet for payment of the Accumulated Sick Leave Obligation, the Court possesses core subject matter jurisdiction over Tenet's 1st Count and the Union's counterclaim to the extent that the same seek to set aside or enforce the Arbitration Award as it pertains to the Accumulated Sick Leave Obligation. For the reasons set forth in the ensuing section of the instant opinion, the Arbitration Award must be set aside to the extent that said award places upon Tenet liability to satisfy the Accumulated Sick Leave Obligation.

## V.

Although "[c]ourts have a limited role in reviewing arbitration awards," *International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, Local 249 v. Western Pennsyl-* *vania Motor Carriers Association*, 574 F.2d 783, 786 (3rd Cir.1978); *see also, e.g., NF&M Corp. v. United Steelworkers of America*, 524 F.2d 756, 759 (3rd Cir.1975) ("the scope of judicial review of an arbitrator's award is severely limited"); *Sheet Metal Workers' Association Local 19 v. J.S. Mechanical Contractors, Inc.*, 973 F.Supp. 516, 519 (E.D.Pa.1997) ("where parties to a ... [collective bargaining agreement] have agreed to submit disputes to a[n arbitrator] ..., the scope of a district court's review in a proceeding to confirm [or set aside] the ... [arbitrator's] award is 'exceedingly narrow' "); 13 *Employment Coordinator* ¶ LR–44, 727 (West 2001) ("The scope of a court's review of an arbitration award is ordinarily very limited"), an arbitration award may nevertheless be set aside if, *inter alia*, (a) an arbitrator lacks jurisdiction over the dispute to which an arbitration award pertains, *see Western Pennsylvania Motor Carriers Association*, 574 F.2d at 789 (award vacated because arbitrator lacked jurisdiction over spotting dispute); *Kaplan v. First Options of Chicago, Inc.*, 19 F.3d 1503, 1523 (3rd Cir.1994) (because arbitrators lacked jurisdiction over disputes involving Kaplans individually, arbitrators' award against Kaplans individually vacated); *International Association of Heat and Frost Insulators and Asbestos Workers Local Union 42 v. Absolute Environmental Services, Inc.*, 814 F.Supp. 392, 403 (D.Del.1993) (arbitration award vacated with respect to its imposition of liability upon defendant Donohoe because Donohoe did not have duty to arbitrate under collective bargaining agreement and, thus, arbitration board lacked jurisdiction over Donohoe), (b) an arbitration award "does not 'draw its essence from the collective bargaining agreement,' " *Western Pennsylvania Motor Carriers Association*, 574 F.2d at 786; *see also, e.g., Morysville Body Works, Inc. v. United Steelworkers of*

*America*, 1977 WL 1808 at *2 (E.D.Pa. 1977) (same), or (c) there existed " '[p]rocedural irregularities ... [which] result[ed] in ... fundamental unfairness' " to the party against whom an award is given. *Teamsters Local 312 v. Matlack, Inc.*, 118 F.3d 985, 995 (3rd Cir.1997); *see also Hoteles Condado Beach, La Concha and Convention Center v. Union De Tronquistas Local 901*, 763 F.2d 34, 40 (1st Cir.1985) (arbitrator's refusal to consider critical evidence warranted setting aside of arbitration award); *Newark Stereotypers' Union No. 18 v. Newark Morning Ledger Co.*, 397 F.2d 594, 599 (3rd Cir.1968) (arbitrator's refusal to hear evidence such that party is thereby deprived of a fair hearing warrants vacation of arbitrator's award). The Court concludes that each of the three preceding grounds exist with respect to the Arbitration Award so as to dictate that the Arbitration Award be set aside to the extent that it places upon Tenet liability to satisfy the Accumulated Sick Leave Obligation. The rationale for the preceding holding follows.

**A. Arbitrator Tener Lacked Jurisdiction to Impose the Accumulated Sick Leave Obligation Upon Tenet.**

 As an initial matter, Arbitrator Tener, because he granted the Arbitration Award to the Union, necessarily, albeit implicitly, determined that he had jurisdiction over the disputes which he resolved via the Arbitration Award. "However, whether the arbitrator has jurisdiction over a particular dispute[—]i.e. whether the controversy is arbitrable[—]is a question for the court to decide," *Western Pennsylvania Motor Carriers Association*, 574 F.2d at 787; *see also, e.g., Laborers' International Union of North America, AFL—CIO v. Foster Wheeler Corp.*, 868 F.2d 573, 576 (3rd Cir.1989) (" 'the question of arbitrability ... is undeniably an issue for judicial determination' "); *Sheet*

*Metal Workers' Association*, 973 F.Supp. at 520 (same), which legal maxim necessarily means that (a) "[a]n arbitrator's decision[, explicit or implicit,] to assert jurisdiction over objection is ... subject 'to a much broader and more rigorous judicial review' than an arbitral decision on the merits," *Kaplan*, 19 F.3d at 1512, (b) a jurisdictional decision by an arbitrator is, in fact, "subject to *de novo* judicial review," *Id.*, and (c) an arbitrator's jurisdictional decision is thus essentially entitled to no deference by a court upon its review. *See Sheet Metal Workers' Association*, 973 F.Supp. at 520. That a court rather than an arbitrator decides whether a particular controversy is arbitrable follows because (a) "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit," *United Steelworkers of America v. Warrior and Gulf Navigation Co.*, 363 U.S. 574, 582, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409 (1960); *see also, e.g., Western Pennsylvania Motor Carriers Association*, 574 F.2d at 787 ("Since the jurisdiction of the arbitrator is contractually granted by the parties, the question as to whether a particular dispute is arbitrable necessarily depends on 'whether the parties [have] agreed to submit the dispute to arbitration' "); *Kaplan*, 19 F.3d at 1512 (quoting from *AT & T Techs., Inc. v. Communications Workers*, 475 U.S. 643, 648–49, 106 S.Ct. 1415, 1418, 89 L.Ed.2d 648 (1986), to the effect that " 'arbitrators derive their authority to resolve disputes only because the parties have agreed in advance to submit such grievances to arbitration' "), and (b) "[t]he Congress ... has by § 301 of the Labor Management Relations Act[, 29 U.S.C. § 185,] assigned [to] the courts the duty of determining whether the reluctant party has breached his promise to arbitrate." *Warrior and Gulf Navigation Co.*, 363 U.S. at 582, 80 S.Ct.

at 1353. Therefore, because Arbitrator Tener's implicit determination regarding the arbitrability of the disputes resolved via the Arbitration Award is not entitled to any deference upon judicial review, the Court will consider said issue of arbitrability as if it had never been addressed.

▆ Whether an arbitrator has jurisdiction over a particular labor dispute—i.e., whether the controversy is arbitrable—is a twofold question that requires a resolution of the twin issues of whether (a) a particular party has agreed to arbitrate said dispute—i.e., is said party a party to a collective bargaining agreement such that it is bound by a particular arbitration provision in said agreement, and (b) said dispute is within the scope of an arbitration clause—i.e., is the subject of said dispute one that the parties have agreed to arbitrate. *See Sheet Metal Workers' Association,* 973 F.Supp. at 520 (" 'nothing we say here diminishes the responsibility of a court to determine whether a union and [an] employer have agreed to arbitration. That issue, as well as the scope of the arbitration clause, remains a matter for judicial decision' "); *Absolute Environmental Services,* 814 F.Supp. at 403–04 ("However, only defendant AESI was bound by the collective bargaining agreement and only AESI possessed a contractual duty to submit to arbitration thereunder"); *American Bell, Inc. v. Federation of Telephone Workers of Pennsylvania,* 736 F.2d 879, 884 (3rd Cir.1984) ("ABI has presented this court with the question whether it is bound by the bargaining agreement on the basis of Bell's transfer of assets, and whether it must therefore arbitrate disputes about its employment practices. This question is antecedent to any issue that the arbitrator may decide, and in fact will determine whether the arbitrator has jurisdiction"). In his opinion Arbitrator Tener described the dispute which he resolved therein as follows: "Did the Employer violate the ... [CBAs] by refusing to pay employees sick leave starting with the first day of absence[—i.e., the Prospective Sick Leave Obligation—]and by refusing to pay employees accumulated sick leave[—i.e., the Accumulated Sick Leave Obligation]?" Arbitrator Tener Opinion, at 1. Because Tenet and the Union disputed then whether Tenet was even a party to the CBAs so that it could be considered "the Employer" thereunder, and since Arbitrator Tener ultimately imposed liability for both of the Sick Leave Obligations upon Tenet, Arbitrator Tener also necessarily, albeit perhaps unwittingly, resolved against Tenet the sub-dispute of whether Tenet was a party to the CBAs so that it was also "the Employer" thereunder. Furthermore, because Arbitrator Tener granted the Arbitration Award to the Union, Arbitrator Tener also necessarily determined, albeit implicitly, that Tenet was bound by the arbitration provisions in the CBAs such that Tenet had a duty to arbitrate disputes regarding the Sick Leave Obligations. For two reasons, the Court holds that Arbitrator Tener lacked jurisdiction to impose liability for the Accumulated Sick Leave Obligation upon Tenet.

▆ First, the Court concludes that, because the CBAs were assumed by the debtor and assigned to Tenet such that Tenet assumed liability for, *inter alia,* the Prospective Sick Leave Obligation, Tenet also assumed the duty contained in the CBAs to arbitrate disputes regarding the Prospective Sick Leave Obligation. However, because Tenet, via the aforesaid assumption and assignment of the CBAs, did not assume liability for the Accumulated Sick Leave Obligation, the Court must conclude that Tenet likewise did not assume the duty contained in the CBAs to arbitrate disputes regarding the Accumu-

lated Sick Leave Obligation. Although the preceding analysis seems to the Court to be self-evident, the Court also notes that, if it were to hold otherwise, then Tenet would have a duty under the CBAs to arbitrate disputes regarding an obligation for which Tenet cannot be held liable—i.e., the Accumulated Sick Leave Obligation—and for which the debtor consequently remains liable, which result is truly senseless, likely prejudicial to the debtor in its view, and thus ultimately disruptive of due process. Therefore, because Tenet, at the time of the arbitration, was not bound by the arbitration provisions in the CBAs such that Tenet had a duty to arbitrate disputes regarding the Accumulated Sick Leave Obligation, the Court must conclude that Tenet did not then agree to arbitrate any disputes regarding such obligation, which conclusion, in turn, dictates a holding by the Court that Arbitrator Tener lacked jurisdiction over any such disputes involving Tenet or, stated differently, that such disputes, at least to the extent that they involved Tenet, were not arbitrable.

■ Second, the Court concludes, after examining pertinent provisions contained in the CBAs regarding arbitration, that such provisions do not include within their scope of disputes to be referred to arbitration disputes as to whether an entity is a party to the CBAs so that it can be considered "the Employer" thereunder. The Court concludes as it does because (a) the term "grievance" is "defined as a dispute or complaint arising between the parties hereto under or out of this Agreement [(i.e., the CBAs)] or by interpretation, application, performance, termination, or any alleged breach thereof," *see* Tenet Br. in Support of Sum.J.Mot., filed Apr. 2, 2001 (Docket No. 42) (copies of the relevant portions of the CBAs are attached to back of brief, see Section 1 of Article on "Grievance Procedure" in each), (b) a dispute as to whether an entity is a party to the CBAs does not have as its genesis the CBAs but rather arises under or out of, at least in the instant matter, the APA and the Sales Orders, which means that such a dispute does not constitute a "grievance" under the CBAs, and (c) grievances, in turn, constitute the universe of that which can be referred for arbitration under the CBAs. *See Id.* (copies of relevant portions of CBAs, see Article on "Arbitration"). Because a dispute as to whether an entity is a party to the CBAs so that it can be considered "the Employer" thereunder is not among those which can be referred for arbitration under the CBAs—i.e., is not a dispute within the scope of the CBAs' arbitration clauses—the Court must hold that (a) Arbitrator Tener lacked jurisdiction over the dispute whether Tenet was a party to the CBAs so that Tenet could also be considered "the Employer" thereunder with consequent responsibility for the satisfaction of the Sick Leave Obligations, and (b) such dispute, stated differently, was not arbitrable.

Because Arbitrator Tener, for the two above stated reasons, lacked jurisdiction over the dispute whether Tenet, in particular, violated the CBAs by refusing to pay the Union employees the Accumulated Sick Leave Obligation, Arbitrator Tener also lacked jurisdiction to impose liability for said obligation upon Tenet, which conclusion, in turn, dictates that the Arbitration Award be vacated to the extent that it places upon Tenet liability to satisfy such obligation.[14]

---

14. Although the Court does not understand the Union and the Trustee to contend that Tenet, by participating in the arbitration hearing before Arbitrator Tener, waived its right to judicial review of Arbitrator Tener's jurisdiction over the dispute between Tenet and the Union vis-a-vis the Accumulated Sick Leave Obligation, the Court holds that Tenet

## B. The Arbitration Award as it Pertains to the Accumulated Sick Leave Obligation Does Not Draw its Essence From the CBAs.

 The Third Circuit has elaborated on whether an arbitration award draws its essence from a collective bargaining agreement as follows:

[A] labor arbitrator's award does "draw its essence from the collective bargaining agreement" if the interpretation can in any rational way be derived from the agreement, viewed in the light of its language, its context, and any other indicia of the parties' intention; only where there is a manifest disregard of the agreement, totally unsupported by principles of contract construction and the law of the shop, may a reviewing court disturb the award.

*Ludwig Honold Mfg. Co. v. Fletcher*, 405 F.2d 1123, 1128 (3rd Cir.1969); *see also NF&M Corp.*, 524 F.2d at 759 (quoting *Ludwig Honold*); *Western Pennsylvania Motor Carriers Association*, 574 F.2d at 786 (same). Furthermore, "if an examination of the record before the arbitrator reveals no support whatever for his determinations, his award ... would have no rational basis in the agreement and must be vacated." *NF&M Corp.*, 524 F.2d at 760; *see also Tanoma Mining Co., Inc. v. Local Union No. 1269, United Mine Workers of America*, 896 F.2d 745, 748 (3rd Cir.1990) (quoting *NF&M Corp.*).

 Applying the preceding statements of the law to the instant matter, the Court holds that Arbitrator Tener's determination, to wit that Tenet was a party under the CBAs and, in particular, the party thereunder responsible for the satisfaction of, *inter alia*, the Accumulated Sick Leave Obligation, does not draw its essence from the CBAs. The Court holds as it does because such determination by Arbitrator Tener cannot in any rational way be derived from the CBAs themselves; indeed, the only relevant rational derivation to be made from the CBAs as of the date of the arbitration is that the debtor or one of its affiliates was the sole non-Union party to each of the CBAs and, thus, the party thereunder responsible for the satisfaction of obligations such as the Sick Leave Obligations. In order for Arbitrator Tener to have rationally determined that Tenet was a party under the CBAs and, in particular, the party thereunder responsible for the satisfaction of, *inter alia*, the Sick Leave Obligations, Arbitrator Tener necessarily would have needed to resort to an examination and interpretation of documents other than the CBAs such as, in particular, the APA and the Sales Orders. Furthermore, that the APA and the Sales Orders were offered for inclusion in, and apparently were accepted into, the record before Arbitrator Tener, and that such documents are dispositive of whether, and to what extent, Tenet was a party to the CBAs, cannot serve to rationalize Arbitrator Tener's determination vis-a-vis Tenet because (a) Arbitrator Tener lacked authority to consider such documents, *see Absolute Environmental Services*, 814 F.Supp. at 404 ("Under the Supreme Court's decision in *Alexander v. Gardner–Denver Co.*, [415 U.S. 36, 94 S.Ct.

---

did not so waive such right to judicial review. The preceding holding is warranted because (a) "[p]articipation in an arbitration hearing on the merits does not constitute a waiver of the right to federal court review on the issue of arbitrability if the respondent in arbitration explicitly preserves its challenge to the arbitrator's jurisdiction," 13 *Employment Coordi-*

*nator* ¶ LR–44,738 (West 2001); *see also Kaplan*, 19 F.3d at 1510 (same), and (b) Tenet preserved its challenge to Arbitrator Tener's aforesaid jurisdiction. *See* Arbitrator Tener Opinion, at 4 (citing to pages 10 and 12 of the transcript of the arbitration hearing before Arbitrator Tener).

1011, 39 L.Ed.2d 147 (1974)], (an arbitrator may not consider questions of federal or state law in rendering an award. *The arbitrator may only interpret and apply the terms of the bargain he is called upon to enforce.");* *see also supra* p. 122 diction to consider disputes that had their genesis in the APA and the Sales Orders rather than in the CBAs), (b) such documents consequently were admitted into the record before Arbitrator Tener in error, and (c) Arbitrator Tener, likely realizing that he was not free to consider such documents in his analysis, expressly refused to consider such documents. *See* Arbitrator Tener Opinion, at 11 ("This determination is based solely on my reading and interpretation of the collective bargaining agreements and obviously does not constitute a determination under the Bankruptcy Code or the Asset Purchase Agreement or the National Labor Relations Act or any other external authority").

Therefore, Arbitrator Tener's determination, to wit that Tenet was a party under the CBAs and, in particular, the party thereunder responsible for the satisfaction of, *inter alia,* the Accumulated Sick Leave Obligation, does not draw its essence from the CBAs. Consequently, the Arbitration Award, at least to the extent that it places liability upon Tenet for the Accumulated Sick Leave Obligation, likewise fails to draw its essence from the CBAs, which means that said award must be vacated as it pertains to the Accumulated Sick Leave Obligation.[15]

**C.** ***Arbitrator Tener's Refusal to Consider the APA and the Sales Orders When Resolving the Dispute of Whether Tenet was a Party to the CBAs Resulted in Fundamental Unfairness to Tenet That Warrants Setting Aside the Arbitration Award.***

The Court has already determined that, although Arbitrator Tener lacked jurisdiction over the dispute whether Tenet was, as of the date of the arbitration hearing, a party to the CBAs, Arbitrator Tener nevertheless resolved such dispute, albeit perhaps unwittingly. Tenet argues, and the Court has also already found, that Arbitra-

---

**15.** In order to make the award of the Accumulated Sick Leave Obligation to the Union, Arbitrator Tener implicitly determined that the Union employees' employment did not terminate under the CBAs on the Closing Date. Tenet not only disagrees with the aforesaid implicit determination by Arbitrator Tener but contends as well that such determination results in the Arbitration Award not drawing its essence from the CBAs, thereby constituting another independent ground upon which the Arbitration Award should be set aside. *See* Tenet Br. in Opp. To Summ. J.Mot. of Union & Trustee, filed May 1, 2001 (Docket No. 51), at 21. The Court rejects such a position by Tenet, however, and not just because the Court has already determined in a prior part of the instant opinion that the Union employees' employment did not, in fact, terminate under the CBAs on the Closing Date. *See supra* p. 111. The Court concludes that it could not vacate the Arbitration Award on the basis of Arbitrator Tener's implicit determination that the Union employees' employment did not terminate under the CBAs on the Closing Date—even were the Court to disagree with such determination—because (a) Arbitrator Tener could have rationally predicated the aforesaid determination upon the undisputed fact that there was not a practical lapse in the employment of the Union employees after the Closing Date—i.e., said employees were continuously employed, albeit first with the debtor and then with Tenet, *cf. Shawver v. R.H. Macy & Co., Inc.,* 697 F.Supp. 1515, 1525–27 (W.D.Mo.1988) (employee plan administrators' interpretation of severance plan such that the term "laid off" in such plan did not include employees who were never unemployed but continued their employment under a new employer was reasonable and, thus, was not arbitrary and capricious), and (b) such a determination, given that it would be rational, would draw its essence from the CBAs.

tor Tener (a) refused to consider the APA and the Sales Orders when resolving such dispute, and (b) necessarily needed to examine and interpret such documents in order to rationally resolve such dispute. Tenet maintains that such refusal by Arbitrator Tener to consider the APA and the Sales Orders constitutes an independent ground for vacating the Arbitration Award given that such documents are crucial to a resolution of whether Tenet was a party to the CBAs.

 Indeed, "[v]acatur [of an arbitration award] is appropriate ... when the exclusion of relevant evidence [by an arbitrator] 'so affects the rights of a party that it may be said that he was deprived of a fair hearing.'" *Hoteles Condado Beach,* 763 F.2d at 40 (quoting *Newark Stereotypers' Union,* 397 F.2d at 599); *see also Lucas v. Philco–Ford Corp.,* 399 F.Supp. 1184, 1190 (E.D.Pa.1975) (citing *Newark Stereotypers' Union* for proposition that arbitrator's refusal to hear evidence that so affects rights of a party as to deprive him of a fair hearing dictates vacation of arbitration award); *Graphic Arts International Union, Local 97–B v. Haddon Craftsmen, Inc.,* 489 F.Supp. 1088, 1095 (M.D.Pa.1979) (same). Furthermore, a refusal by an arbitrator to consider evidence that he or she has already admitted into the record—and which thus has not been technically excluded—constitutes an effective exclusion of such evidence nevertheless, which effective exclusion, if it also operates to deprive a party of a fair hearing, warrants the setting aside of an arbitration award. *See Hoteles Condado Beach,* 763 F.2d at 40 (transcript accepted into evidence by arbitrator was "effectively excluded" by arbitrator's refusal to consider same, which effective exclusion was " 'so destructive of [the Company's] right to present [its] case[ ] that it warrants the setting aside of the· arbitration award' "); 13 *Employment Coordinator* ¶ LR–44, 758 (West 2001).

 The Court concludes that Arbitrator Tener, although he accepted into evidence, and thus did not technically exclude, the APA and the Sales Orders, nevertheless effectively excluded such documents by his refusal to consider the same. Furthermore, the Court concludes that such effective exclusion of such documents by Arbitrator Tener so negatively affected Tenet's right to present its case regarding the dispute surrounding whether Tenet was a party to the CBAs that it can now be said that Tenet was deprived of a fair hearing with respect to such dispute. Because the resolution of such dispute was critical to Arbitrator Tener's levying of the Arbitration Award against Tenet, Arbitrator Tener's refusal to consider the APA and the Sales Orders dictates that the Arbitration Award be set aside, at least to the extent that the same imposes liability upon Tenet for the Accumulated Sick Leave Obligation.

The Court would be remiss if it did not address the position of the Union with respect to the treatment accorded the APA and the Sales Orders by Arbitrator Tener. The Union contends that (a) Arbitrator Tener accepted into evidence and, thus, did not exclude the APA and the Sales Orders, (b) Arbitrator Tener in his opinion even cited, as well as discussed Tenet's arguments by referring, to such documents, and (c) the parties sparred at some length over the effect of the documents at the arbitration hearing. Unfortunately for the Union, none of the preceding points, even if true, serve to negate the Court's conclusion that Arbitrator Tener effectively excluded the APA and the Sales Orders during the course of the arbitration proceeding. In particular, that Arbitrator Tener technically did not exclude the APA and the Sales Orders says nothing about whether he effectively excluded such documents. As well, Arbitra-

tor Tener's reference to such documents while merely recounting in his opinion the details of Tenet's multifaceted position does not constitute a consideration of such documents by himself; in fact, Arbitrator Tener, at the end of his opinion, took care to expressly inform all that he refused to consider such documents when passing upon the disputes which he resolved therein. Finally, that the parties may have spent considerable time during the arbitration hearing sparring over the legal effect of the APA and the Sales Orders does not mean that Arbitrator Tener did not subsequently banish from his consideration, and thus effectively exclude, such documents. Because a finding that evidence was effectively excluded will suffice to warrant the vacation of an arbitration award—provided, of course, that the consideration of such evidence is also critical to affording a party a fair hearing—the Union's preceding contentions, even though apparently correct, will not impact the Court's decision to vacate in part the Arbitration Award.

The Court also holds that its prior conclusion, to wit that Arbitrator Tener lacked authority to consider, and thus erroneously admitted into the record, the APA and the Sales Orders, does not negatively impact, and in fact can be reconciled with, the Court's instant conclusion that Arbitrator Tener's refusal to consider such documents deprived Tenet of a fair hearing regarding the dispute whether Tenet was a party to the CBAs. The preceding holding follows because (a) Arbitrator Tener lacked authority to consider the APA and the Sales Orders only because he lacked, in turn, jurisdiction over disputes having their genesis in documents other than the CBAs, see supra pp. 123–24, (b) the dispute as to whether Tenet was a party to the CBAs is a dispute having its genesis in documents other than the CBAs, namely the APA and the Sales Orders, see supra p. 122, (c) the dispute as to whether Tenet was a party to

the CBAs, since it had it genesis in the APA and the Sales Orders, necessarily required Arbitrator Tener to consider such documents, see supra pp. 123 & 124–25, failing which Arbitrator Tener would deprive Tenet of a fair hearing with respect to such dispute, see supra p. 125, and (d) Arbitrator Tener's exercise of jurisdiction which he lacked—i.e., jurisdiction over the dispute whether Tenet was a party to the CBAs—thus placed Arbitrator Tener in the unenviable, if not impossible, position of having to consider documents that he lacked authority to consider—i.e., the APA and the Sales Orders—failing which consideration he would prejudicially deprive Tenet of a fair hearing regarding such dispute.

## VI.

In light of the foregoing, the Court disposes in the following manner of the summary judgment motions of Tenet and the Union as the same relate to the portions of Tenet's 1st Count and the Union's counterclaim that are not dismissed:

(a) to the extent of the relief which the Court provides to Tenet in the form of the declaration that the Sales Orders and the APA operate to preclude the Union from pursuing Tenet for payment of the Accumulated Sick Leave Obligation, the summary judgment motion of Tenet is granted and that of the Union is denied with prejudice;

(b) to the extent of the relief which the Court provides to the Union in the form of the declaration that the Sales Orders and the APA do not operate to preclude the Union from pursuing Tenet for payment of the Prospective Sick Leave Obligation, the summary judgment motion of the Union is granted and that of Tenet is denied with prejudice; and

(c) to the extent of the relief provided to Tenet via the Court's vacation of the Arbitration Award as it pertains to the

Accumulated Sick Leave Obligation, the summary judgment motion of Tenet is granted and that of the Union is denied with prejudice.

As for Tenet's 2nd Count as it relates to the Accumulated Sick Leave Obligation, the Court holds that Tenet, pursuant to Sales Order dat. Oct. 1, 1998, at p. 13 ¶ 7 and APA ¶ 9.01(c), would have been entitled to indemnification from the debtor's bankruptcy estate if the Arbitration Award had not been vacated as it pertained to the Accumulated Sick Leave Obligation given that the debtor rather than Tenet remains liable under the APA for satisfaction of such obligation. However, because the Court vacates the Arbitration Award to the extent that it places upon Tenet liability to satisfy the Accumulated Sick Leave Obligation, Tenet correspondingly is not entitled to indemnification from the debtor's bankruptcy estate. Therefore, the Court will dismiss without prejudice as moot Tenet's 2nd Count to the extent that Tenet seeks such indemnification for liability related to the Accumulated Sick Leave Obligation.

Because the only issues with respect to the Accumulated Sick Leave Obligation that are presently before the Court are whether Tenet is liable therefor under the APA and, thus, whether the Arbitration Award as it pertains to such obligation must be set aside, the Court need not, and thus does not, resolve the following issues at this time:

(a) whether the Sept. 12, 2000 Stipulation operates to relieve the debtor's bankruptcy estate from liability for the pre-Closing Date sick leave accumulations that comprise the Accumulated Sick Leave Obligation;

(b) whether the Union can presently take advantage of a rule that it may insist upon the timely payment of the pre-Closing Date sick leave accumulations before it performs further under the CBAs, which issue turns upon the resolution of at least several additional issues including, *inter alia*, (i) the preceding issue of whether the Union has stipulated away its rights as against the debtor vis-a-vis the pre-Closing Date sick leave accumulations, and (ii) whether there presently exist any remaining benefits that Tenet is entitled to receive from the Union under the CBAs; and

(c) who shall resolve the issue of the debtor's liability under the CBAs for the pre-Closing Date sick leave accumulations if the Union has not stipulated away its rights as against the debtor for timely payment of the same—i.e., must such issue be submitted for arbitration anew or will the Court decide it?

## VII.

**IN SUMMARY,** (a) the Court possesses core subject matter jurisdiction over the entirety of Tenet's claims and the Union's counterclaim except to the extent that Tenet and the Union seek therein to, respectively, set aside or enforce the Arbitration Award as it relates to the Prospective Sick Leave Obligation—to such limited extent, the Court lacks subject matter jurisdiction over Tenet's 1st Count and the Union's counterclaim, (b) the Sales Orders and the APA are construed such that they operate to preclude the Union from pursuing Tenet for payment of the Accumulated Sick Leave Obligation but they do not operate to preclude the Union from pursuing Tenet for payment of the Prospective Sick Leave Obligation, (c) the Arbitration Award is vacated to the extent that said award places upon Tenet liability to satisfy the Accumulated Sick Leave Obligation, (d) Tenet's 1st Count and the Union's counterclaim are dismissed with prejudice for lack of subject matter jurisdiction to the extent that the same seek to set aside or enforce the Arbitration

Award as it relates to the Prospective Sick Leave Obligation, (e) the summary judgment motions of Tenet and the Union as they relate to the portions of Tenet's 1st Count and the Union's counterclaim that are not dismissed are granted in part and denied with prejudice in part consistent with the foregoing, (f) the Trustee's summary judgment motion with respect to Tenet's 2nd Count is granted, and Tenet's summary judgment motion with respect to said count is denied with prejudice, but only to the extent that Tenet seeks indemnification from the debtor's bankruptcy estate for liability related to the Prospective Sick Leave Obligation, and (g) Tenet's 2nd Count is dismissed without prejudice as being moot to the extent that Tenet seeks indemnification from the debtor's bankruptcy estate for liability related to the Accumulated Sick Leave Obligation.